STATE of Alaska; City of Hoonah, Alaska; Frank Willie Lee, individually and as a police officer, Hoonah, Alaska; Matthew J. Walker, individually and as a police officer, Hoonah, Alaska; Gerald J. Shanahan, individually and as a police officer with Alaska State Troopers, Appellants,

v.

Thomas C. WILL, Appellee.

Nos. S-2904, S-2950.

Supreme Court of Alaska.

March 15, 1991.

Rehearing Denied April 16, 1991.

William G. Mellow, Asst. Atty. Gen., Juneau, and Douglas B. Baily, Atty. Gen., Juneau, for appellants State of Alaska and Gerald J. Shanahan.

Kenneth P. Jacobus and Gregory W. Lessmeier, Hughes, Thorsness, Gantz, Powell & Brundin, Juneau, for appellants City of Hoonah, Frank Willie Lee and Matthew J. Walker.

Thomas G. Nave, Gullufsen & Nave, Juneau, and Peter M. Page, Juneau, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

COMPTON, Justice.

This appeal arises out of an action for damages by a mentally impaired individual, Thomas C. Will, who was shot by law enforcement officers who were attempting to contain and help him. Based on the jury's

special verdict, the trial court entered judgment awarding damages to Will against Hoonah Police Chief Frank Willie Lee, Officer Matthew J. Walker, the City of Hoonah, Alaska State Trooper Gerald J. Shanahan, and the State of Alaska. All of the defendants appealed. Following oral argument on the appeal, Will reached an amicable settlement with the City of Hoonah, Chief Lee and Officer Walker.[1] Therefore, we address only the liability of Trooper Shanahan and the State of Alaska.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Thomas C. Will sought damages for injuries he suffered in a confrontation with law enforcement officers on September 11, 1984, in Hoonah, Alaska. At the time, Will was a commercial fisherman who resided in Sitka. He did not return to Sitka after the 1984 halibut season ended in early September, since his wife had informed him in August that she was divorcing him. Instead, Will went to Elfin Cove where he spent several days fraternizing and drinking with other fishermen.

While in Elfin Cove, Will exhibited acute paranoia, fearing that unknown persons were going to kill him. Apparently another fisherman had planted the seed for Will's delusions, having told Will that people were out to kill him because they thought he was a narcotics agent who would turn people in for running narcotics. Although initially Will did not believe the tale, soon he became increasingly frightened of the people around him.

Will started acting irrationally. He left Elfin Cove hastily in his boat, the *FV Edrie*. In an effort to mislead those he imagined intended to kill him, Will told a friend via radio that he was heading to Pelican. Will in fact went to Gustavus. His paranoia increased. Will told an acquaintance in Gustavus that he did not want to call the Alaska State Troopers (troopers) because he feared that whoever responded, even if in uniform, could be the person out to kill him. After one night in Gustavus, Will cut his anchor line and departed for Pleasant Island.

Will anchored off of Pleasant Island using a makeshift anchor. He became more afraid, jumped off his boat, and swam about 75 yards to the boat of another friend. When Will climbed onto the friend's boat, he was heavily armed and said that he was a Navy S.E.A.L. Shortly thereafter, he jumped into the water again and swam to the boat of yet another friend. Although it was late at night, Will woke his friend and they spent three hours cruising around in Icy Strait.

Will returned to his boat and stayed there until daybreak when he departed for Point Adolfus. There he left his boat adrift, paddled his skiff to shore, and headed into the woods. He was dressed only in cutoffs and boots.

After Will's boat was found adrift in Icy Strait, family members contacted the Hoonah Police Department (HPD) and the troopers on September 10, 1984, to report Will missing. They told the HPD and troopers about Will's mental instability. They explained that Will's paranoia made it likely that he would react unfavorably to the sight of uniformed police officers and suggested that they be permitted to approach him first. Several of Will's friends told the HPD that Will was armed with a pistol and was a threat to any uniformed officers.

Will turned up at Port Frederick on September 11 and got a ride to Hoonah. Several Hoonah residents called the HPD and reported that Will was in town, armed with a pistol. Will visited some friends and then went to the Hoonah harbor, where his boat had been towed after it was found adrift. Will located his boat, but was unable to get it started. He remained on his boat, threatening persons who walked nearby. At about 9:30 p.m., while he was still on his boat, he fired a shot with his pistol. This action was reported to Chief Frank Lee,

---

1. In an order filed February 8, 1991, we dismissed the appeal of the City of Hoonah, Chief Lee and Officer Walker.

who arrived at the harbor a few minutes later with several other officers, including Matthew Walker. Walker was a reserve officer who had no formal police training. Chief Lee had also called for and obtained back-up from off-duty Trooper Gerald Shanahan. Relying on information that Will might be afraid of persons in uniform, they removed their uniforms before approaching the area.

The officers covertly surrounded the boat and began to warn away anyone who came toward the dock. Chief Lee had not formulated a specific plan of action and did not instruct the officers how to respond in the event Will left his boat. At one point Chief Lee left the harbor to get an additional weapon at the police station.

For about an hour and a half the officers watched the *FV Edrie* from hiding places behind crab pots piled on the dock. Will was unaware that the officers had surrounded him. They made no attempt to communicate with him. Ultimately, Chief Lee wanted to bring a relative or friend of Will's to the scene. Harbormaster Paul Dybdahl tried to reach Will's brother Craig by marine radio, but was unsuccessful. The HPD was unsuccessful in trying to get in touch with Will's wife in Sitka. Sandy Will later called the HPD from Juneau, but was unable to get to Hoonah.

During the surveillance Will left the *FV Edrie* for approximately ten minutes and visited another boat docked nearby. After returning to the *FV Edrie*, Will again tried to start the boat. After he failed to start it for the second time, he left the boat and walked or ran up the dock ramp, armed with a pistol. Chief Lee, Shanahan and Walker were still concealed behind crab pots on the dock above the ramp. Will stopped at the top of the ramp, apparently to adjust his eyes to the light. After seeing two flashes to his right, he fired his pistol in that direction. Shanahan and Walker fired back, wounding Will at least five times. Will returned their fire at least twice. Thinking that Will was reaching for

his pistol, Walker fired another shot after Will had fallen to the ground. Will was charged with assault in the third degree on Trooper Shanahan, a charge to which he pleaded *nolo contendere* (guilty but mentally impaired).

 Claiming damages for battery, negligence, and violations of his constitutional rights, Will sued the State of Alaska (state), the City of Hoonah (city), and the three law enforcement officers involved in the shooting. The trial court entered judgment on the jury's special verdict against all the defendants, awarding Will $2,240,-000.00 plus interest. The trial court denied defendants' motions for judgment notwithstanding the verdict, judgment consistent with the verdict, new trial, and remittitur. The remaining appellants challenge the denial of these motions as well as the trial court's earlier denial of their motion for summary judgment.[2]

## II. STANDARD OF REVIEW

The following standards of review apply to the issues raised by appellants. Under Civil Rule 56(c), summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Southeast Alaska Constr. Co. v. State, Dep't of Transp.*, 791 P.2d 339, 342 (Alaska 1990). In reviewing denial of motions for a directed verdict or judgment notwithstanding the verdict, this court must determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable persons could not differ in their judgment as to the facts. *Mullen v. Christiansen*, 642 P.2d 1345, 1348 (Alaska 1982). This court must affirm the denial of a motion for a new trial if there is an evidentiary basis for the jury's decision. *Id.*

The same legal issues underlie each of the appellants' motions. We consider these matters of law *de novo* and adopt the rules of law which are most persuasive in light

---

2. The state and Shanahan do not discuss the remittitur issue in their brief. Therefore, we consider appeal of the trial court's denial of remittitur waived. *Weaver v. O'Meara Motor Co.*, 452 P.2d 87, 93 (Alaska 1969).

of precedent, reason and policy. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

## III. DISCUSSION

### A. LIABILITY OF TROOPER SHANAHAN.

■ The jury found that Trooper Shanahan was justified in firing at Will and that he had not committed assault or battery. The jury also found that he was not negligent. The trial court, however, determined that as a matter of law Trooper Shanahan is liable for the negligence of the city and Chief Lee under a theory of "acting in concert." We disagree with the trial court's conclusion and hold that Trooper Shanahan is not liable to Will for the damages Will suffered in the shoot-out.

We have stated that "[o]ne who acts in concert with others to plan or assist in the commission of a tort is liable as a tortfeasor." *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 348 (Alaska 1982). In *Williams* we held an individual defendant liable for the battery inflicted on the plaintiff by others, even though he personally only threatened the plaintiff. The purpose underlying the "acting in concert" theory of liability is to hold all individuals engaged in a joint enterprise with a tortious purpose accountable for the harm any member of the enterprise may inflict. W. Prosser, *The Law of Torts* § 46, at 322–23 (5th ed. 1984).

■ Our holding in *Williams* is inapplicable to this case. *Williams* involved the commission of collective intentional torts, yet in this case the trial court held Trooper Shanahan liable for the negligence of the city and Chief Lee. An individual who acts with reasonable care cannot be deemed negligent simply because those with whom he cooperates act negligently. Restatement (Second) of Torts § 876 comment c (1979). Law enforcement officers frequently must act jointly to accomplish their duties. The mere fact that two or more officers may cooperate to apprehend an individual does not make all of the participating officers liable for the negligence of one. The Second Restatement of Torts provides the following illustration of this principle:

> A is drunk and disorderly on the public street. B, C and D, who are all police officers, attempt to arrest A for the misdemeanor committed in their presence. A resists arrest. B and C take hold of A, using no more force than is reasonable under the circumstances. A breaks away and attempts to escape. D draws a pistol and shoots A in the back. B and C are not liable to A for the shooting.

Restatement (Second) of Torts § 876 comment c, illustration 3 (1979). *See also Day v. Walton*, 199 Tenn. 10, 281 S.W.2d 685, 689–90 (1955) ("where there is no joint negligence, no encouragement to do the particular act, no *unlawful* common enterprise or objective, then there is no joint liability for an unlawful act committed by one of several parties") (emphasis in original).

In this case, the jury found that Trooper Shanahan was not negligent. He responded to an emergency call for assistance from the city. The state argues persuasively that holding an innocent participant liable for the negligence of another under an "acting in concert" theory will discourage those capable of helping from providing rescue assistance. We agree.

Whether a defendant acted with reasonable care is a question of fact for the jury to determine. The trial court incorrectly relied on the "acting in concert" theory to create negligence where the jury found there was none. Therefore, we conclude that Trooper Shanahan is not liable for Will's injuries.

### B. LIABILITY OF THE STATE OF ALASKA.

■ The jury found that the state was negligent, but further that the state's negligence was not the legal cause of Will's injury. We cannot know the basis for the jury's conclusion that the state was negligent. Presumably the jury determined that the state was negligent because of its failure to aid Will after family members notified the troopers of Will's difficulties one day prior to the shooting. Even if an individual is negligent, that person is not

liable at common law for another's injuries unless the negligence is a legal (i.e., proximate) cause of those injuries. *Alvey v. Pioneer Oilfield Serv., Inc.,* 648 P.2d 599, 600 (Alaska 1982). Since the jury found that the state's negligence did not legally cause Will's injuries, the state is not directly liable to Will for its own negligence.[3]

■■■ The trial court, however, concluded that the state is vicariously liable to Will because of Trooper Shanahan's participation in the events prior to the shooting. Under the theory of respondeat superior, an employer is liable for the negligence of an employee as long as that employee is acting within the scope of his or her employment. *Williams,* 650 P.2d at 349. As discussed in the preceding section, the trial court incorrectly held that Trooper Shanahan was negligent because of his participation in the conflict with Will. Since Trooper Shanahan is not negligent, no basis exists for finding the state liable for Will's injuries.[4]

## IV. CONCLUSION

Because we conclude that the trial court incorrectly applied the "acting in concert" theory, the trial court's judgment against Trooper Shanahan and the State of Alaska is REVERSED and the case REMANDED with instructions to enter judgment in their favor consistent with the jury's special verdict.

---

3. "The issue of proximate cause is normally a question of fact for the jury to decide and becomes a matter of law only where reasonable minds could not differ." *Dura Corp. v. Harned,* 703 P.2d 396, 406 (Alaska 1985). Here, there is no persuasive reason for us not to accept the jury's finding that the state's negligence was not the legal cause of Will's injuries.

4. We do not need to address whether either Trooper Shanahan or the state violated Will's constitutional rights since the judgment for Will on the claims under title 42, section 1983 of the United States Code was against the City of Hoonah only.