CITY OF NORTH POLE, Petitioner,

v.

Betty ZABEK, Respondent.

Betty ZABEK, Appellant
and Cross–Appellee,

v.

CITY OF NORTH POLE, Appellee
and Cross–Appellant.

Nos. S–6777, S–6907, S–6927.

Supreme Court of Alaska.

Feb. 21, 1997.

Rehearing Denied April 3, 1997.

John J. Tiemessen, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for Petitioner City of North Pole.

Brett M. Wood, Fairbanks, for Respondent, Appellant and Cross–Appellee Betty Zabek.

Joseph W. Sheehan, Fairbanks, for Appellee and Cross–Appellant City of North Pole.

Before COMPTON, C.J., MATTHEWS and EASTAUGH, JJ., RABINOWITZ and SHORTELL, JJ. pro tem.*

## OPINION

COMPTON, Chief Justice.

### I. INTRODUCTION

The City of North Pole (City) terminated Betty Zabek's employment as a police dispatcher without providing a hearing. Zabek appealed this termination to the City's personnel review board (PRB), which heard oral argument some months after the termination. The PRB later affirmed Zabek's termination.

Zabek appealed to the superior court. The superior court found that Zabek's termination violated her right to due process of law, and that the appeal before the PRB did not provide sufficient process to serve as a curative post-termination hearing. It or-dered that Zabek receive back pay minus any mitigation, granted in part her request for attorney's fees and costs, and remanded her case to the PRB for a post-termination hearing. Although the superior court's ruling did not constitute an appealable final judgment, the City nonetheless has "appealed" both the court's finding of a due process violation and the award of attorney's fees and costs.

Zabek filed a separate action against the City alleging, *inter alia*, that the City and its employees deprived her of federally protected rights in violation of 42 U.S.C. § 1983 (section 1983), and that the City was liable to her for slander. The superior court rejected both of these claims on summary judgment and awarded attorney's fees and costs for the City. Zabek appeals the summary judgment on these two claims; the City cross-appeals, claiming that the superior court inappropriately reduced the attorney's fee award.

We have elected to treat the City's attempt to appeal from the superior court's due process determination as a petition for review, grant the petition, and affirm in part and reverse in part that decision. We affirm the superior court's award of summary judgment to the City on Zabek's section 1983 and slander claims, as well as the court's reduction in the City's attorney's fee award.

### II. FACTS AND PROCEEDINGS

Zabek was employed as a police dispatcher for the North Pole Police Department (NPPD). As a dispatcher, Zabek was authorized to use the Alaska Public Safety Information Network (APSIN), a confidential computerized database that contains information on criminal and driving records. Zabek concedes that having security clearance to access APSIN was a requirement of her job.

In 1991 an investigation by the Alaska State Troopers (AST) uncovered evidence that Zabek had (1) used APSIN to run a personal search of the license plate numbers of cars parked at a local mayoral candidate's headquarters, (2) allowed unauthorized persons physical access to a secure APSIN area, and (3) disseminated information obtained

---

* Sitting by assignment made under article IV, sec-tion 16 of the Alaska Constitution.

through the APSIN system to an unauthorized individual. After reviewing the AST investigative report, the State Department of Public Safety, Control Terminal Agency (CTA), revoked Zabek's access to APSIN. On October 18, 1991, the date on which Zabek's access to APSIN was revoked, NPPD Police Chief Lynn F. Lamm wrote Zabek to inform her that her employment would be terminated, effective November 1, as a result of her loss of APSIN access.

Zabek filed a grievance under the City's employee grievance procedure. A City ordinance establishes a three-step grievance procedure culminating in an appeal to the mayor. At no step in the process is a hearing required, although the mayor does have the discretion to hold a hearing at step three. North Pole Code of Ordinances (NPCO) § 2.60.070(A). Mayor Lute Cunningham affirmed Lamm's termination of Zabek without holding a hearing.

After the three-step grievance procedure was exhausted, Zabek appealed the outcome to the PRB, the City's personnel review board made up of the city council. NPCO § 2.60.070(A)(3), .080. The PRB heard oral argument on February 22, 1992; Zabek was represented by counsel at this hearing. After permitting some post-argument supplementation of the record, the PRB affirmed Zabek's termination on April 6.

Zabek appealed the decision of the PRB to the superior court. The superior court ruled that Zabek had been denied a pretermination hearing in violation of her due process rights, and that the process she received after her termination did not remedy this deficiency. It remanded the case to the PRB for an adequate post-termination hearing and an award of back pay, minus any mitigation.

Prior to the superior court's decision regarding Zabek's due process claim, she brought a separate action in the superior court against the City, Lamm, and unknown defendants alleging various tortious acts, including slander. Zabek's complaint in this separate action was amended to include a claim that the City had deprived her of federally-protected rights in violation of section 1983.

The superior court granted the City's motion for summary judgment. It ruled that Zabek's section 1983 claim was barred by collateral estoppel. It also ruled that Zabek's failure to identify any employees of the City who had disseminated slanderous information about her undermined any basis upon which the City could be held vicariously liable for slander. The superior court awarded attorney's fees to the City only for those fees accrued in defending against Zabek's state law claims.

Despite the fact that the superior court did not enter final judgment as to Zabek's due process claim in her administrative appeal, the City has attempted to appeal the superior court's decision, as well as the court's award of attorney's fees incurred in defending this claim. Zabek appeals the superior court's rejection of her separate section 1983 and slander claims, arguing that her section 1983 claim was not barred by collateral estoppel and that the summary judgment on her slander claim was error. The City cross-appeals, arguing that the superior court erred in awarding attorney's fees for only those fees accrued in defending against Zabek's state law claims.

We have elected to treat the City's attempt to appeal the due process decision as a petition for review, which we grant and consolidate with the appeal and cross-appeal of the superior court's judgment on the separate section 1983 and slander claims.

## III. DISCUSSION

### A. Appealability of the Superior Court's Decision

■ "[A] decision of a superior court, acting as an intermediate appellate court, which reverses the judgment of the court below or the decision of an administrative agency and remands for further proceedings, is a non-final order of the superior court." *City and Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629 (Alaska 1979). We lack appellate jurisdiction when a superior court has not issued a final judgment. *See* Alaska R.App.P. 202 ("An appeal may be taken to the supreme court from a final judgment entered by the superior court. . . .").

In deciding Zabek's due process claim, the superior court reversed the administrative decision of the PRB and remanded for further proceedings. Under *Thibodeau*, the decision of the court does not constitute a final judgment in the case. The ruling of the superior court was therefore not a final judgment, and this court lacks appellate jurisdiction over the case under Alaska Appellate Rule 202. Courts must be mindful of our holding in *Thibodeau*. Litigants also should keep *Thibodeau* in mind, since the usual consequence of an improperly brought appeal is dismissal.

Although the City erred in trying to bring this action as an appeal from a final judgment, we may choose instead to treat this "appeal" as a petition for review, pursuant to Alaska Appellate Rule 402. Review of a non-appealable order or decision is not a matter of right "but will be granted only where the sound policy behind the rule requiring appeals to be taken only from final judgments is outweighed" by the presence and significance of various enumerated considerations. Alaska R.App.P. 402(b).[1] While appeal and petition for review, "the two routes to this court[,] are mutually exclusive," *Jordan v. Reed*, 544 P.2d 75, 79 (Alaska 1975), "[t]his court has not hesitated to treat an appeal improperly brought from a non-final judgment as a petition for review in order to prevent hardship and injustice." *Thibodeau*, 595 P.2d at 631 (footnote omitted). We have also chosen to treat an improperly brought appeal as a petition for review when "we believe[d] that our disposition of this case will effectively dispose of the issues remaining in the underlying civil action" and would "prevent 'unnecessary delay, expense, [and] hardship' to the parties." *Wade Oilfield v. Providence Washington Ins. Co. of Alaska*, 759 P.2d 1302, 1305 n. 6 (Alaska 1988) (quoting Alaska R.App.P. 610(b)(1)). Finally, when "a constitutional question of particular substance and importance has been presented we will consider this appeal as a petition for review, and grant review." *Muller v. State*, 478 P.2d 822, 824 (Alaska 1971) (footnote omitted).

All of these considerations that led us to treat the improperly brought appeals in *Thibodeau*, *Wade*, and *Muller* as petitions for review are present in this case. The City presents us with a constitutional question of some importance, both parties face the hardship of continued appeals, rehearings, and delay,[2] and we believe our resolution of this due process dispute can effectively dispose of the remaining issues before the superior court. Therefore, we choose to treat this appeal as a petition for review, which we grant.

While we conclude that the facts of this case warrant treating this improperly brought appeal as a petition for review, situations like this are rare. We grant petitions for review only when certain conditions are met. *See* Alaska R.App.P. 402(b). It is far more difficult to gain entry to this court through this discretionary review than it is through an appeal as of right. Unless the

---

1. These considerations are as follows:

> (1) Postponement of review until appeal may be taken from a final judgment will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors; or
> (2) The order or decision involves an important question of law on which there is substantial ground for difference of opinion, and an immediate review of the order or decision may materially advance the ultimate termination of the litigation, or may advance an important public interest which might be compromised if the petition is not granted; or
> (3) The trial court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for the appellate court's power of supervision and review; or

> (4) The issue is one which might otherwise evade review, and an immediate decision by the appellate court is needed for the guidance of the lower courts or is otherwise in the public interest.

Alaska R.App.P. 402(b).

2. The alleged due process violation that underlies this appeal has already generated two other lawsuits and a rehearing before the PRB. Zabek brought a section 1983 action based on her due process claim; this related action is one of the subjects of the appeal before us that we have consolidated with this petition for review. The superior court, in finding that Zabek's due process rights were violated, ordered a rehearing before the PRB. This rehearing took place in June 1994. Zabek is currently appealing the PRB's decision upon this rehearing before the superior court, alleging, *inter alia*, that this hearing also denied her of due process of law.

prerequisites for treating such a premature "appeal" as a petition for review are met, it will be dismissed.

### B. Due Process

#### 1. The City violated Zabek's due process right to a pre-termination hearing.

■ The United States[3] and Alaska[4] Constitutions prohibit state actions that deprive individuals of property without due process of law.[5] Public employees who may be terminated only for just cause have a property interest in continued employment. Storrs v. Municipality of Anchorage, 721 P.2d 1146, 1148 (Alaska 1986), cert. denied, 479 U.S. 1032, 107 S.Ct. 878, 93 L.Ed.2d 832 (1987). Zabek was such an employee, and her interest in continued employment was therefore protected by the Due Process Clauses of the United States and Alaska Constitutions.

■ "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). "Like the federal constitution, the Alaska constitution affords pretermination due process protection to public employees who may only be terminated for just cause." Storrs, 721 P.2d at 1150. "At a minimum, the employee must receive oral or written notice of the proposed discharge, an explanation of the employer's evidence, and an opportunity to present his position." Id. at 1149.

The right to a pre-termination hearing deserves particular consideration in this case. The Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportu-

nity for a hearing before he is deprived of any significant property interest.'" Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493, (quoting Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)) (emphasis in original). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Loudermill, 470 U.S. at 542, 105 S.Ct. at 1493 (quoting Board of Regents v. Roth, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972)). We have "consistently held that due process of law guaranteed by the United States and Alaska Constitutions requires a pre-termination hearing." Odum v. University of Alaska, Anchorage, 845 P.2d 432, 434 (Alaska 1993) (citing Storrs, 721 P.2d at 1149–50; Kenai Peninsula Borough Bd. of Educ. v. Brown, 691 P.2d 1034, 1037 (Alaska 1984); McMillan v. Anchorage Community Hosp., 646 P.2d 857, 864 (Alaska 1982); University of Alaska v. Chauvin, 521 P.2d 1234, 1238 (Alaska 1974); Nichols v. Eckert, 504 P.2d 1359, 1366 (Alaska 1973) (Erwin, J., concurring)).

■ The City failed to provide Zabek with the opportunity to be heard prior to her termination. Zabek was in Florida, on an extended leave, at the time the termination decision was made. Chief Lamm's letter informing Zabek of her termination was dated October 18, 1991; it simply informed Zabek that her termination would become effective on November 1. The Due Process Clauses require more pre-termination process than this.

■ The City argues that because Zabek neither contested the fact that APSIN clearance was a requirement of her job nor the fact that her clearance had been revoked, no hearing was required; there were no dispositive facts left to be determined through the adversarial process. "While this case apparently presents no factual issues, it is not

---

3. "... nor shall any state deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1.

4. "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7.

5. "Issues of constitutional interpretation are questions of law which this court reviews de novo." Revelle v. Marston, 898 P.2d 917, 925 n. 13 (Alaska 1995).

possible to be certain without a proper hearing." *McCarrey v. Commissioner of Natural Resources,* 526 P.2d 1353, 1357 (Alaska 1974). We have never held that the apparent absence of dispute over dispositive facts makes a summary termination without the constitutionally-mandated pre-termination hearing acceptable. Indeed, one of the reasons a pre-termination hearing is required is to give the employee the opportunity to present in her defense facts which, if developed, might weigh against her termination. Even if it appears almost certain that the employee will be unable to do so, due process requires that she be given the opportunity to try. The City's reasoning would foreclose this opportunity, prejudging the merits of termination decisions.

The City also argues that it did not need to offer Zabek a pre-termination hearing because she was on extended leave; because "Ms. Zabek was out of the state for twenty days after her ASPIN [sic] clearance was revoked[,][t]here was no opportunity for a pre-termination hearing." The City was not confronted with a situation so urgent that Zabek had to be terminated within those twenty days. *See Breeden v. City of Nome,* 628 P.2d 924, 927 (Alaska 1981) (twenty-four hour notice period "a time period not justified by the urgency of the city's interests involved"). We see no reason why the City could not have scheduled a pretermination hearing and invited Zabek to return for it.

The superior court correctly determined that Zabek had a due process right to a pre-termination hearing, and that her summary termination violated this right.

2. *Zabek's appeal before the PRB on February 22, 1992 served as a curative post-termination hearing.*

■■■ A failure to provide sufficient pre-termination process may be corrected by a curative post-termination hearing in which due process is provided. The evidence pre-

sented in such a post-termination hearing may be sufficient to justify a suspension or termination *after* such a hearing, even if it would have been insufficient to justify a summary suspension or termination. *See Brown,* 691 P.2d at 1039; *McMillan,* 646 P.2d at 866–67.

■■■ "A full judicial hearing is not necessary, but a hearing that allows the administrative authority to examine both sides of the controversy will protect the interests and rights of all who are involved." *Nichols,* 504 P.2d at 1365. Zabek was provided with an adversarial proceeding. She had the benefit of counsel at the proceeding. Finally, she was allowed to frame the issues that would be explored at this proceeding.

The procedures adopted for the hearing before the PRB did not provide for the calling of witnesses, but only for a half hour of oral argument by each side. The PRB did allow for some supplementation of the record after oral argument, which allowed Zabek to submit some witness testimony through affidavits. However, Zabek did not have the benefit of this testimony at the actual oral hearing before the PRB.

■■■ In *Nichols,* we found the charge of teacher incompetency sufficiently serious to warrant the heightened procedural protection that the right to call witnesses brings. *Id.* This case is distinguishable. Unlike the termination of the teachers in *Nichols,* Zabek's termination was not based on serious charges that would call her very character or capacity for employment into question, charges such as incompetency, misconduct, or dishonesty. Instead, her termination was based solely on the revocation of her APSIN clearance. This revocation was a decision made by the CTA, not the City; the City did not base its termination on the merits of the CTA decision to revoke Zabek's APSIN clearance, but only on the fact of the revocation itself.[6] Had the City based its termi-

---

6. In *Degnan v. Bering Strait School District,* 753 P.2d 146 (Alaska 1988), we were presented with a factual situation that was similar in some respects. Degnan was an employee of the school district whose employment was terminated without a hearing after the state commissioner of education refused to approve his contract. *Id.* at

148. Without such approval, Degnan's contract was rendered void *ab initio;* state law in effect at the time prohibited the district's employment of a member of the immediate family of a school board member without the written approval of the commissioner, and Degnan's sister was on the board at the time he was hired. *Id.* at 148–

nation on the merits, this termination would have been based on charges the serious nature and consequences of which would be undeniable. Because the City's decision to terminate Zabek was based solely on her loss of APSIN clearance, however, the post-hearing supplementation of the record with witness affidavits provided Zabek with all the process due to her.

We therefore conclude that the superior court erred in determining that the February 1992 hearing before the PRB failed to provide sufficient due process to serve as a curative post-termination hearing, and we reverse this part of its decision.

3. *Zabek was entitled to an award of back pay without adjustment for mitigation.*

The superior court ruled that Zabek was entitled to back pay minus mitigation from the date of her wrongful termination through

the date she receives the curative post-termination hearing that the court ordered. As discussed above, we have concluded that the February 1992 appeal before the PRB had already served as a curative post-termination hearing by the 1994 date of this ruling. *See* section III.2., *supra.*

 The PRB did not issue a valid termination decision at the time of the February 1992 hearing, however. Instead, it waited until April 6 to issue its decision affirming Zabek's termination. April 6 is therefore the date that Zabek's termination became legally effective, since it was only then that Zabek was notified of her termination *after* the provision of adequate due process. Zabek's back pay award must therefore be measured from November 1, 1991, the date of her unconstitutional summary termination, through April 6, 1992. *See Brown,* 691 P.2d at 1038–39; *McMillan,* 646 P.2d at 867.[7]

---

49. We affirmed the district's termination of Degnan, observing:

> The legal validity of Degnan's contract, and hence the extent to which he was entitled to procedural protection upon its termination, was dependent upon (1) whether his sister was on the board at the time of his hiring, and (2) whether written approval of his contract was obtained from the commissioner. Because we conclude that Degnan was afforded ample notice and opportunity to be heard, at least as to these threshold questions, prior to his termination, we find no violation of Degnan's due process rights.

*Id.* at 149 (footnote omitted). We went on to explain:

> While a contract which is void for illegality does not itself convey a constitutionally protected property interest, an erroneous assumption of illegality by a government agency could result in the denial of pretermination rights to persons possessing a valid contract. In light of the risk of such deprivations, we think that due process requires at least minimal notice and opportunity to be heard *as to the basic facts underlying the alleged illegality.*

*Id.* at 149 n. 6. (emphasis added).

*Degnan* does not stand for the proposition that a public employer may never terminate an employee on the basis of underlying determinations made by another agency without first correcting for the other agency's failure to provide minimal due process in making those determinations. Instead, *Degnan* merely stands for the proposition that an underlying determination that would deny the very existence of a constitutionally-protected property interest cannot form the basis of

a subsequent termination without the provision of the due process to which such an interest would give rise, unless adequate process is first provided as to that underlying determination itself.

Zabek's termination does not present us with the situation presented in *Degnan.* The determination made by the CTA did not affect the process due Zabek, for it did not render her contract void *ab initio,* thereby denying the existence of her property interest in continued employment. The CTA never determined that Zabek's contract was illegal, nor did it make any determinations that rendered her contract illegal. Zabek still possessed a valid contract after losing her APSIN clearance. While she could no longer perform her duties under this contract after losing her clearance, her contract remained valid, and the City was required to provide her with adequate due process before it could terminate her employment. The City therefore owed Zabek no due process whatsoever as to the underlying determinations that led to the revocation of her APSIN clearance, despite the fact that the CTA, unlike the commissioner in *Degnan,* had failed to provide even minimal due process in making its determinations.

7. Had the PRB provided a clear indication, either at the hearing or in its February 28 interim decision, of how it would decide Zabek's appeal, Zabek's back pay period would have ended earlier. *See North Slope Borough v. Barraza,* 906 P.2d 1377, 1379–81 (Alaska 1995) (interim decision found just cause to terminate employee; therefore, back pay only awarded through date of interim decision, not date of issuance of formal findings of fact and conclusions of law). Here,

■ The superior court held that Zabek's back pay award should be reduced by mitigation, if any. However, because the period between the November 1 termination and the April 6 decision of the PRB was a brief one, we hold that the City is not entitled to reduce Zabek's back pay award by any mitigation. Given the specialized nature of Zabek's employment as a police dispatcher, we conclude that it would be unreasonable to place upon her the burden of finding comparable employment during so short a period of time. This is particularly so, since part of this period was spent preparing for a hearing within four months of her unlawful termination.

### 4. The award of attorney's fees to Zabek must be remanded for reconsideration.

Because of our decision regarding Zabek's due process claim, we remand for a reconsideration of the attorney's fee award and a redetermination of prevailing party status.

### C. Zabek's Section 1983 Claim

Zabek's section 1983 claim is based on her allegations that the City deprived her of federally-protected due process rights.[8] Because we hold that the February 1992 PRB hearing provided sufficient due process to serve as a curative post-termination hearing, we need not reach the merits of Zabek's appeal of the superior court's judgment on her separate section 1983 claim. The due process violation was corrected by the February hearing before the PRB, leaving Zabek's subsequent section 1983 claim without an underlying deprivation of constitutional

right upon which to be based.[9] The superior court's summary judgment on Zabek's section 1983 claim is rendered correct by virtue of our decision on the due process claim.

### D. Zabek's Slander Claim

The superior court granted the City's motion for summary judgment on Zabek's separate slander claim, observing that there is no "basis for holding the City liable based on the actions of unidentified employees when [its] liability is purely vicarious, as responde-at superior is."[10]

■ For vicarious liability to attach, some sort of underlying liability must be established for which the employer can be held liable. State v. Will, 807 P.2d 467, 471 (Alaska 1991) (state cannot be vicariously liable for negligence through trooper when trooper himself not negligent); Bevins v. Ballard, 655 P.2d 757, 760 n. 2 (Alaska 1982) (broker not vicariously liable for acts of employee when trial court found in favor of employee).

■ Zabek never alleged any facts that could establish this sort of underlying liability because she never presented any evidence which, if taken to be true, would identify a particular employee of the City as the source of slanderous statements against her. Zabek had stipulated to a dismissal of all claims against Lamm, the one employee of the City she had named as a defendant in her action. For over nine months, she had been unable to identify any other individual employees who might arguably be liable for slander themselves. Because she could not point to

---

however, the interim decision only called for supplementation of the record. Because it gave no indication of how the PRB would decide Zabek's appeal, Zabek is entitled to back pay through the date of the PRB's April 6 decision.

8. 42 U.S.C. § 1983 provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

9. The dissent argues that Zabek's § 1983 claims should be discussed because the court holds that her due process rights were initially violated. However, because any violation of Zabek's due process rights was cured, there is no constitutional violation on which to base Zabek's § 1983 claim. It is unnecessary to discuss the § 1983 issues raised by the dissent.

10. "When reviewing a grant of summary judgment, this court 'must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts.' " Zeman v. Lufthansa German Airlines, 699 P.2d 1274, 1280 (Alaska 1985) (quoting Brock v. Alaska Int'l Indus., 645 P.2d 188, 190 n. 6 (Alaska 1982)).

any particular employees who might be liable for slander, Zabek failed to allege any material facts through which she might have been able to establish the vicarious liability of the City. The City was therefore entitled to judgment as a matter of law.

### E. *The Reduction of the City's Attorney's Fee Award*

▓▓ Alaska courts do not award attorney's fees against section 1983 plaintiffs for that portion of the prevailing party's attorney's fees incurred defending against the section 1983 action, unless the 1983 action was "frivolous, unreasonable or without foundation." *Lyman v. State*, 824 P.2d 703, 707 (Alaska 1992). The City argues that it deserved a full twenty percent award of its total attorney's fees, pursuant to Alaska Civil Rule 82(b)(2), because Zabek's 1983 claim was frivolous, unreasonable, and without foundation.

▓▓ While the superior court's judgment against Zabek on her section 1983 claim is rendered correct by virtue of our decision on the due process issue, we do not consider this claim so groundless as to be "frivolous, unreasonable, or without foundation." Zabek's claim that the City never provided a curative post-termination hearing lacked merit, but it was not so implausible that Zabek should have known that a section 1983 claim based on it would have lacked any reasonable basis.[11] We therefore hold that the superior court correctly refused to award those attorney's fees accrued in defending against Zabek's section 1983 claim.

## IV. *CONCLUSION*

We AFFIRM the superior court's ruling in the administrative appeal that Zabek was entitled to back pay for the period from her November termination through her proper termination after a curative post-termination hearing before the PRB, but REVERSE its ruling that the February PRB hearing failed to provide sufficient due process to serve as a curative post-termination hearing. We VACATE the award of attorney's fees based on Zabek's due process claim. We REMAND

for a determination of back pay to which Zabek is entitled, and a redetermination of prevailing party status and attorney's fees in the due process action. Back pay is to be awarded without any reduction for mitigation. We AFFIRM the superior court's award of summary judgment for the City on Zabek's separate section 1983 and slander claims, as well as its refusal to award the City attorney's fees accrued in defending against Zabek's 1983 claim.

FABE and BRYNER, JJ., not participating.

SHORTELL, Justice pro tem., with whom RABINOWITZ, Justice, joins, dissenting in part.

Because I believe the majority opinion erroneously holds that Zabek's February 22, 1992 hearing served to "cure" the City's violation of her due process rights, I dissent from the court's decision to deny Zabek a remedy beyond the date of that determination.

I also believe the majority's facile treatment of Zabek's 42 U.S.C. § 1983 claim is mistaken. Zabek should be allowed to press her due process and statutory claims to their legitimate conclusions. The majority opinion erroneously and prematurely cuts off her right to do so.

## I. *DUE PROCESS*

All of the members of the court agree that the City violated Zabek's due process right to a pre-termination hearing, and there can be little dispute on this issue, as both the facts of her initial termination and the law regarding this claim are clear. However, there are two aspects to the due process analysis in this case. The majority correctly analyzes step one but stumbles on step two.

The majority holds that the City complied with due process at its February 22 hearing even though it denied Zabek the opportunity to confront and cross-examine witnesses or present testimony of her own. It concludes that a hearing procedure which allowed Zabek one-half hour to argue her position, but

---

11. Indeed, at the time she brought her section 1983 action, Zabek had already convinced the superior court that her underlying due process claim had merit.

did not allow her to present evidence or confront the city's witnesses, was sufficiently "adversarial" to pass due process muster.

The majority cites four Alaska cases to bolster its analysis. However, none of these cases is persuasive support for the conclusion that Zabek received due process of law. In fact, Alaska law strongly supports the opposite result.

Only *Degnan v. Bering Strait School District,* 753 P.2d 146 (Alaska 1988), recognized by the majority as "similar in some respects" to Zabek's case (Op. at 1298–99 n. 6) allows a result comparable to the court's holding in Zabek's case. But `Degnan` is legally and factually distinguishable.[1]

The other three Alaska cases cited by the majority are *Nichols v. Eckert,* 504 P.2d 1359 (Alaska 1973); *Kenai Peninsula Borough Board of Education v. Brown,* 691 P.2d 1034 (Alaska 1984); and *McMillan v. Anchorage Community Hospital,* 646 P.2d 857 (Alaska 1982). None of these cases support the conclusion that Zabek should receive less due process protection than any other governmental employee fired for misconduct.

In *Nichols,* 504 P.2d at 1365, the court said: "Where the nature and consequences of the charge are serious, ... the right to present witnesses on one's behalf is manifest...." *Nichols,* a teacher terminated for incompetency, was held to have the right to present her defense "by testimony and other evidence." *Id.* Zabek, a police dispatcher terminated for misconduct, is inexplicably found not to be entitled to this adversarial right.

The majority distinguishes *Nichols* by saying that "Zabek's termination was not based

on serious charges that would call her very character or capacity for employment into question, charges such as incompetency, misconduct, or dishonesty." Op. at 1298. This conclusion mischaracterizes the charges that resulted in Zabek's termination. Zabek lost her job because of charges of misconduct against her. The consequences of those charges were undeniably serious. And although the majority says "her termination was based solely on the revocation of her APSIN clearance," this characterization is incorrect.

Zabek's termination letter summarized the charges against her. It said:

> Your actions on August 30, 1991, which led to a subsequent investigation of your conduct by the Alaska State Troopers, were improper, unacceptable, and in violation of the North Pole Police Department Rules and Regulations. Since you are presently out of state, the issue of department disciplinary action relating to your misconduct cannot be appropriately addressed and at this point would perhaps be academic.

The same termination letter refers to another letter, written one day previously, in which the Alaska State Troopers revoked Zabek's APSIN clearance. That revocation letter specified in detail the "misconduct" the City chief of police referred to in the letter which terminated Zabek's employment. The same allegations of misconduct were repeated by the chief in a letter to Zabek's lawyer. The allegations were publicized in a number of newspaper articles that became

---

1. Degnan did not receive an adversarial hearing before his termination from public employment. Degnan's employment was illegal, and thus void *ab initio,* because of a state statute prohibiting nepotism in school district hiring practices. Even so, Degnan was held to be entitled to notice and an opportunity to be heard. *Degnan,* 753 P.2d at 149 n. 6. Although he was given an opportunity to dispute the claim of illegality, Degnan did not dispute the facts that proved the illegality of his employment or deny that illegality. *Id.* at 148. It was in this context that the *Degnan* court said "[a]t the time Degnan was called into the superintendent's office, *he simply possessed no interest protected by due process."*

*Id.* at 150 (emphasis added). *Degnan* would be better cited as support for the majority's conclusion in Section III.B.1 of its opinion that Zabek's due process rights to notice and a pre-termination hearing were violated by her summary termination. By contrast, *Degnan* is rather weak support for the majority's conclusion in section III.B.2 that Zabek, whose employment contract was legally valid, and who claimed that her firing was pretextual and politically motivated, was not entitled to a due process hearing involving anything more than thirty minutes for her to state her position before the city personnel review board.

part of the evidentiary record in Zabek's lawsuit.[2]

The majority uncritically accepts the City's selfserving characterization of this aspect of Zabek's firing. It mischaracterizes the record by oversimplifying, treating the termination as a simple credentials issue in spite of the fact that the circumstances clearly indicate that it involved very serious misconduct charges.

After the majority opinion erroneously minimizes the seriousness and consequences of the charges against Zabek, it goes on to deprive Zabek of due process rights recognized by previous Alaska cases. These cases, cited by the majority but not extensively discussed, require more due process protection than Zabek has been given.

In *Kenai Peninsula Borough Board of Education v. Brown,* 691 P.2d 1034, 1038 (Alaska 1984), a teacher received a post-termination hearing at which he could have presented evidence and cross-examined witnesses. He waived the right to do so. In *McMillan v. Anchorage Community Hospital,* 646 P.2d 857, 859 (Alaska 1982), an anesthesiologist who lost his staff privileges at a hospital received a post-suspension evidentiary hearing that included two days of live testimony. The court held the hearing met due process requirements. "The facts adduced at the second hearing, and the procedural due process afforded McMillan at that hearing ... were sufficient to support a post-hearing suspension.... McMillan was given ample opportunity to confront witnesses against him and to present evidence in his own behalf." *McMillan,* 646 P.2d at 866–67. In *Nichols v. Eckert,* 504 P.2d 1359, 1361 (Alaska 1973), non-tenured teachers dismissed for incompetence were given a post-dismissal hearing at which they were denied the right to call witnesses. The court held, "we conclude that [the teachers] must be given the opportunity to present their own defense by testimony and other evidence." *Nichols,* 504 P.2d at 1365.

In all three of these cases the court held or implied the right to present testimony and cross-examine to be a requirement of due process in circumstances virtually identical to Zabek's. The majority cites *no* Alaska cases which allow denial of these rights on the theory of the majority opinion, which is that the scope of due process protection for terminated governmental employees is defined by the label the terminating authority attaches to the termination. Similarly, no Alaska case has held that the due process rights of such employees are so limited as to require only a post-termination hearing at which the right to present testimonial evidence is denied, the right to confront and cross-examine is denied, and the evidentiary record is supplemented after the hearing by affidavits only.

The majority also glosses over a number of important issues raised by Zabek throughout the proceedings below. Zabek argued that she should have been allowed to present evidence in support of her contentions that her behavior was not illegal. Her other contentions were that the City had tolerated similar behavior on a number of occasions, and that the City should have interceded on her behalf with AST as it had done successfully on behalf of another employee whose APSIN privileges had been suspended. Zabek also implicitly argued that the City's overly simplistic reliance on the APSIN privilege revocation as its sole reason for Zabek's termination was a pretext or sham intended to avoid difficult political and legal issues.

The majority says, "because the City's decision to terminate Zabek was based solely on her loss of APSIN clearance, however, the post-hearing supplementation of the record with witness affidavits provided Zabek with all the process due to her." Op. at 1299. The record does not adequately support the "because" part of this proposition. At the very least the available evidence creates a substantial factual dispute which required an

---

**2.** The fact that the charges were widely publicized is important because of the law regarding the scope of due process protection available to an employee whose dismissal is accompanied by publicity that might be damaging to her reputation. *See Vanelli v. Reynolds,* 667 F.2d 773, 777–78 (9th Cir.1982) ("The procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law."). The law regarding this question is discussed in more detail below.

adequate due process hearing for proper resolution.

The record also shows that Zabek's termination procedure fell far short of complying with due process. The City personnel review board affirmed Zabek's termination without discussing many of the issues raised by her arguments. It made no findings, and simply concluded that Zabek's termination was "lawful." Zabek was not allowed to present evidence before the Board and confront and cross-examine witnesses against her. The administrative record does not show that her defenses were given meaningful consideration.[3]

The question of what process was due Zabek is affected by a line of cases starting with *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Roth*, the court said that dismissal of a government employee accompanied by a "charge against him that might seriously damage his standing and associations in his community" would trigger the due process right to a hearing at which the employee could refute the charges and publicly clear his name. *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. In subsequent cases, the court extended this principle to require such a name-clearing hearing even if the accusations did not "cause" the employment termination, if the accusations received extensive publicity and "occurred in the course of termination of employment." *Owen v. City of Independence, Mo.*, 445 U.S. 622, 633 n. 13, 100 S.Ct. 1398, 1406 n. 13, 63 L.Ed.2d 673 (1980).

Cross-examination and the presentation of evidence are important due process elements of such hearings. *See Adams v. Sewell*, 946 F.2d 757, 765 (11th Cir.1991) (emphasizing importance of cross-examination in due process analysis of post-termination proceedings); *Campbell v. Pierce County, Ga.*, 741 F.2d 1342, 1345 (11th Cir.1984) ("While the features of such a hearing itself have been prescribed with considerable flexibility, courts have required that the claimant have notice of the charges which have been raised against him, and an opportunity to refute, by cross-examination or independent evidence, the allegations which gave rise to the reputational injury.").

With regard to the majority's conclusion that the February 22 hearing "cured" the City's due process problems, there is persuasive case law authority to the contrary. For example, in *Adams*, the court affirmed a § 1983 damages verdict where a post-termination procedure *included* evidentiary hearings, stating:

The County contends that its three-step grievance process, which culminated in the Step III hearing, satisfied Adams's right to post-termination due process of law. The Step III hearing before the County's Grievance Adjustment Board (the "Board") allegedly provided Adams with an opportunity to present his case and cross-examine the witnesses against him in an impartial forum. This court has emphasized the importance of cross-examination in due process analysis; post-termination proceedings have been held inadequate because a terminated employee "had no opportunity to confront and cross-examine his accuser in the presence of the decision maker." *Kelly [v. Smith]*, 764 F.2d [1412,] 1415 [ (11th Cir.1985) ].

. . . .

Although the Step III proceeding included the procedural formalities of an evidentiary hearing, at trial Adams contested the adequacy and fairness of the hearing, as well as the impartiality of the presiding Board, and introduced evidence to support his allegations. These claimed deficiencies in the post-termination process are important because, as noted above, Adams alleged significant procedural flaws in the County's pre-termination process. Under these circumstances, the pre-termination problems were not "cured" by the post-termination hearing, and reasonable jurors could find that the pre- and post-termination procedures provided by the County were inadequate. Accordingly, we deny the County's appeal of the jury verdict for

---

**3.** In 1994, Zabek finally got a hearing where evidence was presented and cross-examination was allowed. The Board made findings and gave reasons for its decision. Comparison of this decision with the original only emphasizes the deficiencies of the February 22, 1992 procedure.

Adams on his procedural due process claim.

*Adams,* 946 F.2d at 765–66. Adams was denied due process because his post-termination hearing had "significant procedural flaws." In comparison, Zabek's hearing procedure was flawed in even more significant ways. We should not "cure" the City's due process problems under these circumstances.

## II. *ZABEK'S SECTION 1983 CLAIM*

In one paragraph, without citation of any authority, the majority extinguishes Zabek's § 1983 claim. On its own rationale, the court affirms summary dismissal of Zabek's § 1983 claim, because of its holding that the February 22 post-termination hearing cured the City's due process problems.[4] I think this conclusion is wrong for a number of reasons.

First, the majority holds that due process was violated by the initial summary firing. How can one say then, as the majority does, that Zabek's subsequent § 1983 claim is left "without an underlying deprivation of constitutional right upon which [the claim can be] based"? Op. at 1300. The court has found such an underlying deprivation of a constitutional right in Section III.B.1. of its opinion. The seriousness of that deprivation and its remedies are factual matters that are traditionally decided in § 1983 lawsuits.

We should also recognize that Zabek has claimed both procedural and substantive due process violations in her § 1983 claim. The first set of claims attacks the procedural deficiencies of the City's administrative appeal process. The second set of claims relates to improper political motivation and pretextual firing. Zabek has established a procedural due process violation as a matter of law. She should be allowed to litigate her

remedy for that violation. She should also have the opportunity to pursue her additional claims, which were never considered or resolved at the administrative level.

Substantive due process claims are properly part of § 1983 actions. *Adams,* 946 F.2d at 766; *Barnett v. Housing Auth. of Atlanta,* 707 F.2d 1571, 1577–78 (11th Cir.1983). Zabek has never had an opportunity to litigate them and we should not cut off her right to do so on the poorly supported assumption that "the City's decision to terminate Zabek was based solely on her loss of APSIN clearance." Op. at 1299.[5]

Finally, the question of damages has not been explored in any great depth here or at the trial court level, so the record does not clearly disclose what specific damages are being sought. The amended complaint asks for "lost employment, emotional distress, and damage to [Zabek's] reputation" and for punitive damages and attorney's fees.

The majority does not address the question of what damages Zabek has claimed pursuant to § 1983. She may be entitled to claim § 1983 pain and suffering damages. *See Bockes v. Fields,* 999 F.2d 788, 789 (4th Cir.1993). In addition, she may be entitled to recover § 1983 compensatory damages such as attorney's fees spent to obtain the ruling that her due process rights were violated. *Endicott v. Huddleston,* 644 F.2d 1208, 1216–17 (7th Cir.1980). Claims for punitive damages are also allowed.[6] *Id.* at 1217. Mental distress damages may be available. *See Vanelli v. Reynolds Sch. Dist. No. 7,* 667 F.2d 773, 781 (9th Cir.1982). Damages for injury to reputation may be appropriate also. *See Endicott,* 644 F.2d at 1217; *Campbell v. Pierce County, Ga.,* 741 F.2d 1342, 1344–45 (11th Cir.1984).

---

**4.** The trial court ruled that Zabek's § 1983 claim was barred by collateral estoppel. That decision is discussed in the next section of this dissent.

**5.** Section 1983 allows litigation of due process claims even after unsuccessful administrative due process challenges to employment terminations. *Adams,* 946 F.2d at 764. A direct § 1983 action independent of administrative proceedings may also be litigated. *See Owen v. City of Independence, Mo.,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Barnett,* 707 F.2d at 1578.

**6.** I agree with the majority that the trial court correctly granted summary judgment on Zabek's slander claim. The § 1983 claims are not solely based on the slander allegations, so dismissal of the slander claim should not preclude her from pursuing relief pursuant to § 1983. She may have stipulated her right to punitive damages away by dropping Police Chief Lamm from her lawsuit. *See Endicott,* 644 F.2d at 1216–17.

Zabek should be entitled to prosecute her § 1983 claim independently. Since the only relief available to her at the administrative level was for lost wages, her right to pursue additional damages pursuant to § 1983 should be preserved.

### III. *COLLATERAL ESTOPPEL*

In ruling that Zabek's § 1983 claim was barred by collateral estoppel, the trial court said:

It's my judgment that Count I is barred by collateral estoppel, that branch being specifically res judicata. The claims that are being brought forward here are the factual claims that have been and are being litigated on the administrative side and Ms. Zabek chose to pursue those administrative remedies. Had she completely foregone her administrative rights, clearly she could have brought this action. However, having once brought the administrative action, she is subject to State procedural requirements such as collateral estoppel, as the Court determined in *Diedrich v. City of Ketchikan.* These facts are inherently bound up in—the facts here on the 1983 claims are inherently bound up in the decisions that are being made in the administrative process. It's also clear, given the broad grant in the North Pole Code Of Ordinances, that Zabek could have pursued the 1983 action there. I conclude that res judicata precludes its submission here, given the decision that she made and I rely on *Diedrich,* as I said, and *Eilrich v. Remas,* 839 F.2d 630, the Ninth Circuit case from 1988.

This basis for dismissal is erroneous also. First, Zabek has established a violation of due process in the failure of the City to provide a pre-termination hearing. She cannot be collaterally estopped from asserting a claim she has prevailed on. Nor can she be precluded from asserting in a § 1983 action claims to damages she was unable to receive in the administrative process. Second, the City's subsequent administrative procedures fell far short of meeting due process requirements. And finally, neither *Diedrich v. City of Ketchikan,* 805 P.2d 362 (Alaska 1991), nor

*Eilrich v. Remas,* 839 F.2d 630 (9th Cir.1988) support the trial court's ruling.

In *Eilrich,* the federal appellate court, applying California law, invoked collateral estoppel doctrine to bar § 1983 relief for a terminated city police officer who had been given a "14–day proceeding resembling a trial" at which both sides were entitled to call, examine and cross-examine witnesses, were represented by counsel, and were given the right to brief and orally argue the officer's first amendment claim. *Id.* at 634. Under these circumstances, the court held that the officer clearly "had an adequate opportunity to litigate his first amendment claim with these procedures." *Id.* at 635.

In *Diedrich,* we applied the *Eilrich* reasoning to preclude Diedrich from litigating § 1983 claims because he "was afforded ample opportunity to litigate his termination before the Board" and because the allegations in the § 1983 complaint were "essentially the same as the issues Diedrich presented to the Board." *Diedrich,* 805 P.2d at 369–70.

As *Eilrich* makes clear, however, issue preclusion arising out of administrative proceedings is only justified if the administrative agency is acting in a "judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Eilrich,* 839 F.2d at 633. Also, the issue necessarily decided at the administrative proceeding must be "identical to the one sought to be relitigated" in the § 1983 lawsuit. *Id.* These requirements were not met in Zabek's case.

Zabek's administrative proceedings did not encompass or resolve most of the issues she tried to raise, she was kept from litigating those issues by the administrative tribunal's limitation of evidence and issues, and she received almost no adversarial rights. Thus the issues litigated at the administrative level were not identical to Zabek's § 1983 claims, and Zabek clearly did not have an adequate opportunity to litigate those issues in the administrative setting. Neither *Eilrich* nor *Diedrich* should be read as authorizing such expansive preclusive effect as the City received in the court below.

## IV. CONCLUSION

The majority opinion makes the following laudable statement in support of its decision to validate Zabek's claim of constitutional violation:

> Indeed, one of the reasons a pre-termination hearing is required is to give the employee the opportunity to present in her defense facts which, if developed, might weigh against her termination. Even if it appears almost certain that the employee will be unable to do so, due process requires that she be given the opportunity to try.

Op. at 1298.

Unfortunately, this reasoning is used only to provide a pyrrhic solution for Zabek. Followed to its logical conclusion, it would allow her to press for more complete relief. Used in a selective way, it simply results in a convenient but inappropriate end to all of Zabek's claims. Her remaining due process and § 1983 claims should not be resolved summarily. For these reasons, I respectfully dissent.