**KENAI PENINSULA BOROUGH BOARD OF EDUCATION,**
Appellant,

v.

**Roy E. BROWN, Jr., Appellee.**

No. 7763.

Supreme Court of Alaska.

Nov. 30, 1984.

Peter C. Partnow, Theodora Accinelli, Hellen, Partnow & Condon, Anchorage, for appellant.

Benjamin O. Walters, Jr., Teresa Hogan, Law Offices of Benj. O. Walters, Jr., Anchorage, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This case involves both procedural and substantive questions with regard to a tenured teacher's dismissal pursuant to AS 14.20.170.[1] The procedural challenge is based on the due process requirements enunciated in AS 14.20.180. The substantive challenge is based on the sufficiency of evidence to support a finding that the teacher committed an act constituting a crime involving moral turpitude.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Roy E. Brown was a tenured teacher at Kenai Central High School. In 1980 Brown was convicted of diverting electricity from the Homer Electric Association in violation of AS 42.20.030 (a misdemeanor statute concerned with obstruction of electric, gas, telegraph or telephone lines). He allegedly had used a splice in an electric line to bypass the meter. Brown was sentenced to jail and ordered to make restitution to the Electric Association.

During the above proceedings, Brown continued to teach. Following the exhaustion of Brown's criminal appellate remedies, Mr. Overman, Executive Director of Personnel for the Kenai Peninsula Borough School District, recommended to the Board of Education (hereafter the Board) that Brown "be dismissed effective immediately." The recommendation for dismissal was based on AS 14.20.170(a)(2) which permits dismissal when a teacher commits an act which constitutes a crime of moral turpitude. On April 28, 1982, Brown was notified that he was "suspended with regular compensation, until the Board of Education determines whether or not it will accept a recommendation for [his] immediate dismissal ...."

A Board meeting was held on May 3, 1982. Brown's dismissal was one matter on the agenda. During the meeting, Brown's attorney spoke before the Board claiming that Brown had not committed a crime of moral turpitude. The Board subsequently approved the dismissal of Brown. It directed Overman to notify Brown and send him a "direct statement of the cause and a complete bill of particulars concerning this dismissal."

On May 4, 1982, Brown was notified that the Board had approved a recommendation for his immediate dismissal and he was informed that he could request a hearing. His pay was terminated effective May 3. Brown requested a public hearing. The hearing was eventually held on July 12, 1982. Following oral argument, the Board reaffirmed its dismissal.

Brown appealed the dismissal to the superior court, which reversed the Board. The court ordered Brown reinstated to his job and awarded him back pay from May 3, 1982 to April 15, 1983, the date of the superior court decision. A subsequent hearing was held on the issue of mitigation. The court held that the Board failed to meet its burden of proof on mitigation. The judge awarded Brown $46,844.00 in back pay, plus costs and attorney's fees. This appeal followed.

Three issues are raised in this appeal. First, did the Board's dismissal comport with Brown's right to due process as set forth in AS 14.20.180? Second, was there sufficient evidence to support a finding of "moral turpitude"? Third, was the award of back pay proper?[2]

## II. PROCEDURAL DUE PROCESS

[1] A tenured teacher's due process rights prior to dismissal are set forth in AS

---

1. AS 14.20.170 provides in pertinent part:
   (a) A teacher, including a teacher who has acquired tenure rights, may be dismissed at any time only for the following causes:

   .        .        .        .        .

   (2) immorality, which is defined as the commission of an act which, under the laws

of the state, constitutes a crime involving moral turpitude....

2. Brown died during the pendency of this appeal. Thus, reinstatement is no longer in issue and we are only asked to determine the availability and scope of a back pay award.

14.20.180.[3] The Board must notify the teacher of the dismissal and provide "a statement of cause and a complete bill of particulars." The teacher may then request a public or private hearing and other rights, such as representation by counsel and cross-examination, are granted during the hearing. This hearing is to be held prior to an effective dismissal. A pre-termination hearing is consistent with due process[4] and AS 14.20.180.

■ The statute speaks of a "notification of dismissal" as if the dismissal is already effective. Such a construction is obviously impermissible since due process rights would only attach *subsequent* to the action. The statute must be interpreted in view of the requirements of due process.

The "notification of dismissal" is a notice that the Board has voted in favor of dismissal. The dismissal cannot be effective, however, until the teacher has had an opportunity to request a hearing if one is desired. The statute gives the teacher fifteen days in which to request a hearing. Thus, the termination is not effective until at least fifteen days following the notification of dismissal. If the teacher does not request a hearing, the dismissal becomes effective immediately following the expiration of the fifteen day period. If the teacher does request a hearing, the dismissal can only be effective after a final majority vote following the hearing.

■ This interpretation of the statute is consistent with our interpretation of former AS 28.35.032(b) (repealed 1983) in *Graham v. State*, 633 P.2d 211 (Alaska 1981). AS 28.35.032(b) set forth the procedure for revocation or suspension of a driver's license based upon a refusal to submit to a chemical test following an arrest for operating a motor vehicle while under the influence of intoxicating liquor or drugs. The statute read in part:

[T]he Department of Public Safety shall notify the person that his license or nonresident privilege to drive a motor vehicle in the state is revoked or suspended, or that no original license or permit will be issued for three months. In the same notice the department shall inform the person that he may initiate a proceeding

---

3. AS 14.20.180 provides:

*Procedure and hearing upon notice of dismissal or nonretention.* (a) An employer shall include in a notification of dismissal of a teacher who has not acquired tenure rights, or of nonretention or dismissal of a tenure teacher, a statement of cause and a complete bill of particulars.

(b) The tenure teacher may, within 15 days immediately following receipt of the notification, notify the employer in writing that a hearing before the school board is requested. The tenure teacher may require in the notification that the hearing be either public or private and that the hearing be under oath or affirmation. The notification may also require that the right of cross-examination be provided and that the tenure teacher be represented by counsel and have the right to subpoena a person who has made allegations which are used as a basis for the decision of the employer.

(c) Upon receipt of the notification requesting a hearing, the employer shall immediately arrange for a hearing, and shall notify the tenure teacher or administrator in writing of the date, time, and place of the hearing. A written transcript, tape, or similar recording of the proceedings shall be kept. Transcribed copies shall be furnished to the tenure teacher for cost upon request of the tenure teacher. A final decision of the school board requires a majority vote of the membership. The vote shall be by roll call. The final decision shall be written and contain specific findings of fact and conclusions of law. A written notification of the decision shall be furnished to the tenure teacher within 10 days of the date of the decision.

4. *McMillan v. Anchorage Community Hospital,* 646 P.2d 857, 864 (Alaska 1982); *Crisp v. Kenai Peninsula Borough School District,* 587 P.2d 1168, 1170 n. 7 (Alaska 1978) (tenured teacher's expectation of continued employment is in the nature of a property interest); *Nichols v. Eckert,* 504 P.2d 1359, 1366 (Alaska 1973) (Erwin, J., concurring).

A summary action prior to a hearing in the case of suspension or discharge of an employee may be justified if the employer's interest is important and significantly outweighs the potential injury to the employee's interests. *See McMillan v. Anchorage Community Hospital,* 646 P.2d 857, 864 (Alaska 1982). The Board's interest is in protecting the students. There may be instances in which a summary suspension would be necessary for the students' welfare. Brown was suspended with pay on April 28 and challenges the validity of this action.

in the district court to rescind the department's action.

AS 28.35.032(b). In *Graham,* the Department of Public Safety revoked Graham's license for ninety days. This action was taken prior to a hearing. We held that the license constituted an important property interest and that before the state could deprive a person of this interest a hearing must be held. "The suspension of Graham's driving privileges for three months could await the hearing afforded under AS 28.35.032(b) without prejudicing any important state interests." 633 P.2d at 216 (footnote omitted). We did not find a denial of due process in that case, however, since Graham's attorney never requested a hearing.[5]

In 1983, when AS 28.35.032(b) was repealed, AS 28.15.165 was enacted to set forth the procedure for driver's license revocations. When a person refuses to submit to a chemical test a notice is given to that person informing him that the department *intends* to revoke his driver's license. The notice acts as a temporary driver's license for seven days and the permanent license is seized. If an administrative review or a hearing is not requested in seven days the revocation becomes effective. Under AS 28.15.166, if the person requests an administrative review another temporary permit shall be issued which is valid until the review date. These statutes reflect the interpretation we gave to the prior statute. This same interpretation must be given the statute dealing with the dismissal of a teacher.

■ Applying the above procedural analysis to Brown's dismissal, we find that the May 3 meeting resulted in a dismissal prior to a hearing in violation of Brown's due process rights. Brown was notified that the Board had approved a recommendation for his immediate dismissal and that his pay was terminated effective May 3. He was told that he could request a hearing, but the dismissal was nonetheless effective prior to the hearing. The May 3 dismissal was invalid and, as such, is voided.

■ The hearing held on July 12, however, did comply with AS 14.20.180 and Brown's due process rights. Brown contends that the hearing was defective because he and the Board treated it as an appeal of the May 3 decision rather than as a separate evidentiary hearing. While there was evidently some confusion about the proper characterization of the hearing, it is clear that both parties understood its nature. The May 4 letter to Brown notified him of his right to request a hearing pursuant to AS 14.20.180. Brown did request such a hearing. AS 14.20.180 clearly sets forth the rights of a teacher during the hearing.

Brown's attorney appears to have made a conscious decision to restrict the argument to the legal issues surrounding the dismissal rather than calling witnesses to testify as to Brown's qualifications as a teacher or to the events leading to Brown's conviction. In a June 17 letter Brown's attorney stated "[s]ince my understanding of the posture of this particular case is that it involves primarily a question of law, I do not anticipate a large number of witnesses nor, for that matter, any witnesses but rather that the entire matter can be presented on the record previously established."

The factual sequence in this case is similar to that before us in the case of *McMillan v. Anchorage Community Hospital,* 646 P.2d 857 (Alaska 1982). In that case a doctor's privileges were summarily suspended in violation of his due process rights. Upon receipt of his suspension notification, McMillan requested a hearing.

---

**5.** In the instant case, Brown did request a hearing so we find no waiver of his due process rights. We also find no merit to the Board's claim that Brown waived his due process rights by not raising the issue before the Board. During the July 12 hearing, Brown's attorney stated that "in the case of a school teacher, before a valuable license and certificate and right to teach, or in this case the right to work, can be removed when it is protected by the laws having to do with tenure, there should have been a formal hearing." The issue was adequately raised.

*Id.* at 860. An evidentiary hearing was held and the hearing committee upheld the suspension. *Id.* We concluded "that the facts adduced at the ... hearing, and the procedural due process afforded McMillan at that hearing and subsequent appeal to the Board, were sufficient to support a post-hearing suspension of his privileges even though they were not sufficient to support summary suspension." *Id.* at 867. We remanded that case for a determination of "McMillan's loss of income, minus any mitigation of damages, from the date of summary suspension up to the proper suspension following the second hearing." *Id.* (footnote omitted).

■ On the issue of procedural due process we reach the same conclusion as that discussed above in *McMillan.* Brown is entitled to his back pay, minus any mitigation, from May 3 to July 12.

### III. MORAL TURPITUDE

Brown was dismissed pursuant to AS 14.20.170(a)(2) which provides for dismissal for "immorality, which is defined as the commission of an act which, under the laws of the state, constitutes a crime involving moral turpitude." The Board relied upon Brown's conviction under AS 42.20.030(7) [6] and concluded that his "conviction of wilfully diverting electricity, which can be considered a form of larceny or theft, constituted grounds for his immediate dismissal." [7] An act of theft is commonly held to be an act involving moral turpitude. 52A C.J.S. *Larceny* § 60(1)(b) (1968).

Brown first contends that the Board could not rely on his conviction under AS 42.20.030(7) since that statute did not de-

fine a crime involving moral turpitude. The California Supreme Court, *In re Hallinan,* 43 Cal.2d 243, 272 P.2d 768 (1954), construed a statute providing for attorney disbarment upon conviction of a felony or misdemeanor involving moral turpitude. The court stated that

> if a conviction for any crime can be had without proof of facts showing moral turpitude, an attorney convicted of such a crime cannot be summarily disbarred under section 6106 and 6102 of the Business and Professions Code. Moral turpitude must be inherent in the commission of the crime itself to warrant summary disbarment under those sections.

*Id.* at 771. *See also In re Rohan,* 578 P.2d 102, 104 (Cal.1978).

■ We previously held in *Selman v. State,* 406 P.2d 181 (Alaska 1965), *overruled on other grounds, Whitton v. State,* 479 P.2d 302, 312 (Alaska 1970), that section (7) of AS 42.20.030 was not a duplication of our larceny statutes. "Proof of any unauthorized diversion, use, appropriation or a mere tapping of the transmission line without the taking of any current would complete proof of the offense charged ...." *Selman,* 406 P.2d at 187. Elements of the crime of larceny, such as an intent to deprive the owner of his property permanently and a taking and carrying away, were not required for a conviction under AS 42.20.030(7). The Board considered Brown's conviction under this statute as the equivalent to a finding that he committed larceny. The Board's dismissal was based on the principle that thefts are crimes of moral turpitude. An act which violates AS 42.20.030(7) does not necessarily include all the elements of a theft, how-

---

**6.** At the time of Brown's conviction the relevant portions of AS 42.20.030 (amended 1980) read:
    *Punishment and civil liability for injury to, interference with, or obstruction of telegraph, telephone, electric, or gas lines.* A person is guilty of a misdemeanor, and upon conviction is punishable by a fine of not more than $500, or by imprisonment for not more than six months, or by both, and is liable to the company or person whose property is injured, or line obstructed, or current diverted, in a sum equal to three times the amount of the actual damages sustained, and three times the price

of the current, light, power, or gas diverted or used, if he

   (7) without the authority of the owner diverts, uses, or appropriates a message or current or taps a wire or line used for the transmission of messages, current, power or gas, or procures or advises this to be done.

**7.** Introduction to Dismissal Hearing Record, July 12, 1982.

ever, and the Board could not dismiss Brown on an assumption that a violation of this statute always constituted a theft.[8]

■ This does not end our inquiry into this matter, however. The Alaska statute defining immorality is broader than the statute at interest in *Hallinan*. In *Hallinan*, the *crime* for which the person was convicted must have involved moral turpitude. *Hallinan*, 272 P.2d at 770. In AS 14.20.170(a)(2), the *act* must constitute a crime involving moral turpitude. A criminal conviction is not necessary. If the Board had sufficient evidence to conclude that Brown committed theft, the dismissal was valid even if Brown was not convicted under a theft statute.

■ From the evidence before the Board pertaining to Brown's conviction under AS 42.20.030(7), we conclude that the Board properly determined that Brown committed "an act which, under the laws of the state, constitutes a crime involving moral turpitude." AS 14.20.170(a)(2). The act which Brown committed was essentially a theft. Brown was charged with "wilfully and unlawfully divert[ing] electric current at his residence prior to the connection with the meter without authorization by the power company to-wit: Homer Electric Association." The criminal complaint states that a trooper "observed a wire splice leading to a fuse disconnect box and a breaker switch panel which controlled electric current not passing through the meter ...."

The jury instructions required that the jury find a willful and unlawful diversion of electricity. A willful act was further defined as an act "done knowingly and intentionally and with a purpose."[9] Finally, Brown was sentenced to jail and required to pay a judgment to Homer Electric Association.

From the above evidence the Board concluded that Brown committed an act of theft,[10] which is a crime involving moral turpitude. We agree that the available evidence pertaining to Brown's criminal conviction supports the inference that Brown committed a theft.

Brown finally contends that the Board was required to find a nexus between the act complained of and the teacher's fitness, capacity, or ability to perform his job function. Many jurisdictions have adopted this nexus test. *See, e.g., Thompson v. Southwest School District*, 483 F.Supp. 1170, 1180 (W.D.Mo.1980); *Morrison v. State Board of Education*, 1 Cal.3d 214, 82 Cal. Rptr. 175, 461 P.2d 375, 382 (1969); *Weissman v. Board of Education*, 190 Colo. 414, 547 P.2d 1267, 1272 (1976). All of the cases cited above, however, involve statutes which allow for dismissal for *immorality*. The term "immorality" is undefined. The main concern of the courts is aptly stated in *Morrison*:

> In the instant case the terms denote immoral or unprofessional conduct or moral turpitude of the teacher which indicates unfitness to teach. Without such a reasonable interpretation the terms would be susceptible to so broad an application as possibly to subject to discipline virtually every teacher in the state. In the opinion of many people laziness, gluttony, vanity, selfishness, avarice, and cowardice constitute immoral conduct.

82 Cal.Rptr. 182–83, 461 P.2d at 382–83 (footnote and citation omitted).

■ Such a concern is not present under Alaska law. The determination of what constitutes immorality is not left to the Board's discretion. Immorality is defined in the statute as an act constituting a

---

**8.** We do not need to decide if AS 42.20.030(7) defined a crime of moral turpitude in its own right. The Board relied upon the conclusion that a theft was committed.

**9.** This is not equivalent to a specific intent to deprive the owner of his property permanently, but it does require that Brown had intentionally spliced into the electric line. The charge, combined with a finding of an intentional splicing,

provides sufficient evidence for the Board to infer a specific intent.

**10.** We note that Brown had an opportunity to rebut this conclusion at the July 12 hearing but he chose not to do so. He did not present any evidence as to the circumstances leading to the conviction.

crime involving moral turpitude. By defining immorality in this manner the legislature obviated the need for a separate showing of nexus. The finding that a crime involving moral turpitude has been committed raises at least a presumption that there is a nexus between the teacher's act and the teacher's fitness to teach. The legislature, in enacting certain criminal statutes, has established minimum acceptable moral standards for the state as a whole. If a teacher cannot abide by these standards his or her fitness as a teacher is necessarily called into question. Of course, during the hearing provided under AS 14.20.180 the teacher may attempt to demonstrate that the Board should retain the teacher despite the finding of a crime involving moral turpitude. Brown did not attempt to do so and we hold that the Board met its burden of going forward by finding that Brown committed a theft.

The judgment is REVERSED and REMANDED.[11]

MOORE, J., not participating.

RABINOWITZ, Justice, dissenting.

There are two ways to interpret what the Board of Education did at the second hearing held in this matter. It is possible to read its decision as one based on the rationale that acts which violate AS 42.20.030(7) are acts constituting a crime involving moral turpitude, on the theory that AS 42.20.030(7) defines a crime involving moral turpitude. Or that the Board's decision reflects its view that the facts it had before it amounted to a theft, and that thefts involve moral turpitude. Under either mode of analysis the Board erred.

First, in my view, AS 42.20.030(7) does not define a crime involving moral turpitude. AS 42.20.030(7) is a general intent criminal statute. The statute simply cannot be read as a theft statute. An accused

could be convicted under this statute by virtue of merely tapping into an electrical line without ever using any electricity. Second, if the Board thought the facts added up to a theft it was mistaken because it did not correctly establish what the controlling facts were. In effect, the Board improperly employed collateral estoppel to determine the facts.

In *Chisholm v. Defense Logistics Agency*, 656 F.2d 42–50 (3rd Cir.1981), the court held that an agency cannot use collateral estoppel for the purpose of establishing the controlling facts without knowing what evidence was before the jury as well as comprehending the different ways in which the jury could have found the defendant guilty. In this regard the *Chisholm* court said in part:

> The doctrine of collateral estoppel can only preclude relitigation of those issues actually litigated and decided in an earlier proceeding. A determination of which issues were litigated may not be immediately discernible when the antecedent criminal suit resulted in a general verdict of the jury or judgment of the court without special findings. *See Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). Accordingly, the Supreme Court has held that when a prior criminal judgment is sought to be used as an estoppel, the court must examine the record of the criminal proceeding, including the pleadings, evidence, jury instructions and other relevant matters in order to determine specifically what issues were decided. *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (collateral estoppel use of general verdict); *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. at 569, 71 S.Ct. at 414 (collateral estoppel use of verdict of guilty). (Footnotes omitted.) *Id.* at 47–48.

---

**11.** The Board also appealed the back pay award based on a mitigation theory. The superior court ordered back pay from May 3, 1982, to April 15, 1983. We find no merit to the Board's claim that the superior court was clearly erroneous, *see Redman v. Department of Education,* 519 P.2d 760, 769 n. 26 (Alaska 1974), in failing to require Brown to mitigate his damages. However, the back pay award must be revised. We are reversing the award except as it relates to the period between May 3 to July 12 of 1982.

Here all the Board had before it was the complaint against Brown, the trial court's instructions to the jury, and the trial court's commitment ordering Brown to jail. Thus, I disagree with the majority's conclusion that the available evidence pertaining to Brown's criminal conviction supports the inference that Brown committed a theft and therefore his dismissal was valid even if he was not convicted under a theft statute (a crime involving moral turpitude).

In accordance with *Chisholm* I would remand the matter to the Board to afford it the opportunity to correctly apply the doctrine of collateral estoppel.[1]

---

1.  In this regard the court in *Chisholm* remanded under the following guidelines:

    Since it is clear that the Board's reversal of the presiding official's determination was based solely on the application of collateral estoppel, we believe it appropriate to remand this case to the Board so that it can ascertain whether the precise issue on which it seems to estop petitioner was in fact litigated and necessarily decided adversely to him. *See Scooper Dooper, Inc. v. Kraftco Corp.,* 494 F.2d 840, [sic] (3d Cir.1974); *United States v. Friedland,* 391 F.2d 378, 382 (2d Cir.1968), *cert. denied,* 404 U.S. 914, 92 S.Ct. 239, 30 L.Ed.2d 188 (1971). The Agency, as the party seeking to effectuate an estoppel, has the burden of demonstrating the propriety of its application. *Id.* It may meet the burden of establishing which issues were litigated by introduction of the record of the criminal proceeding, including the transcript, or magistrate's opinion, if any. If that is not feasible, the Agency should be permitted to bring in extrinsic evidence so that a sufficient and adequate record of the proceeding may be developed. *Basista v. Weir,* 340 F.2d at 82. This could include, for example, testimony about the earlier case by the magistrate, the court reporter, or witnesses. *See Popp v. Eberlein,* 409 F.2d 309, 310 (7th Cir.) *cert. denied,* 396 U.S. 909, 90 S.Ct. 222, 24 L.Ed.2d 185 (1969); F. James & G. Hazard, *Civil Procedure* § 11.17, at 567 (2d ed. 1977). Thus, we conclude that while the Board is entitled to rely on the doctrine of collateral estoppel, its use of that doctrine must follow procedures similar to those established for its use in judicial proceedings. 656 F.2d at 50.