NEWMONT ALASKA LIMITED,
Appellant,

v.

Donald James McDOWELL; Erik Hansen; Estate of John Regan; and Great American Minerals Exploration, Inc., Appellees.

State of Alaska, Department of Natural Resources, Appellant,

v.

Donald James McDowell; Eric Hansen; Estate of John Regan; and Great American Minerals Exploration, Inc., Appellees.

Nos. S–9323, S–9333.

Supreme Court of Alaska.

May 18, 2001.

Rehearing Denied July 3, 2001.

Joseph J. Perkins, Jr. and Barbara F. Fullmer, Guess & Rudd, P.C., Anchorage, for Appellant Newmont Alaska Limited.

Louis Agi, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant State of Alaska.

James N. Reeves, Dorsey & Whitney, LLP, Anchorage, for Appellees.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Mining claimants who miss rent deadlines automatically lose their claims. But claimants whose rent is "deficient but otherwise timely paid" are entitled to notice and an opportunity to cure the deficiency under AS 38.05.265. Jerry Clay owed two years' rent simultaneously. He paid an amount equal to the first year's rent plus four hundred dollars. Because this four hundred dollar surplus constitutes deficient but timely payment of the second year's rent, we conclude that Clay is entitled to an opportunity to cure the deficiency under AS 38.05.265.

## II. FACTS AND PROCEEDINGS

Miners who "locate" state lands by staking claims to them must pay the first year's rent on their claims within ninety days.[1] This payment establishes the claim through the following September 1, at which point rent is due for the next rental year.[2] Claimants who wish to maintain their claims must pay rent for the second year between September 1 and December 1, or the Department of Natural Resources (DNR) will consider the claims abandoned.[3]

For claimants who locate land in June, July, or August, these requirements create overlapping payment obligations: rent for Year One and rent for Year Two are both due between September 1 and December 1. Although DNR sends courtesy notices to most claimants when rent is due, at the time of this case the agency was unable to generate notices for the claimants affected by this overlap.

Appellant Newmont Alaska, Ltd. (Newmont) is the successor in interest to Jerry Clay. Clay and his business partners were the original locators of most of the 224 claims at issue in this case. Clay and the others initially held title to the claims through two Nevada corporations, of which the men were officers and principal shareholders. But in August of 1997 they re-staked the claims in the name of Clay as a private individual. In November Clay recorded and paid rent on the 224 claims staked in August, as well as on twenty additional claims staked in September. The September claims are not at issue in this case, but are relevant to the legal questions raised.

Clay's November payment should have included:

- $20 for each of the 224 August claims, as rent for 1996–1997 (Year One);
- $20 for each of the 224 August claims, as rent for 1997–1998 (Year Two);
- $20 for each of the twenty September claims, as rent for 1997–1998 (Year Two for purposes of this case, but the first year in which Clay paid rent on these claims).

Therefore, his total payment should have been $9,360.

However, when Clay went to the recording office to pay his rent due, a DNR agent told Clay that he owed only $4,880. This figure reflected one year's rent of $20 for each of the 244 total claims. But Clay should actually have paid *two* years' rent on the 224 August claims and one year's rent on the twenty September claims, for a total of $9,360. According to Clay, the DNR agent assured him that his $4,880 payment covered all rent owed. Clay apparently wrote "1st yr rental" on his check. He received a receipt for "rental payment for 244 claims."

DNR applied the payment to Clay's Year Two rent. It therefore determined that Clay had failed to pay for Year One, and had abandoned the claims. At the end of January 1998, DNR sent Clay decision letters to notify him that his claims were "considered abandoned effective December 2, 1997."

Clay appealed the decision letters to the DNR division director. He argued that he was entitled to notice and opportunity to cure

---

1. *See* 11 Alaska Administrative Code (AAC) 86.215(f) (1999). This regulation was updated in 1998 and 1999; Clay's payment is governed by former 11 AAC 86.215(f) (1990). However, for purposes of this case, the current and former regulations are interchangeable.

2. *See id.*

3. *See* 11 AAC 86.221(d) (dates) & 11 AAC 86.221(e) (abandonment); AS 38.05.265.

his deficient payments under AS 38.05.265. The statute provides that non-payment results in abandonment, while deficient but timely payment is curable. The division director found that Clay's payment of $4,880 was a deficient but timely partial payment under AS 38.05.265. Therefore, the director reversed the abandonment determination of the decision letters.

The director's decision provided that any adversely affected persons could seek reconsideration of the decision. Several parties—the "December claimants," who are appellees in this case or were predecessors in interest to appellees in this case—sought reconsideration. These parties had staked new claims to the disputed sites beginning on December 2, 1997—the day that Clay's claims expired for abandonment and many weeks before Clay received notice from DNR.[4] Their claims could only be valid if Clay's were legally extinguished.[5]

DNR Commissioner John Shively's final decision on reconsideration affirmed the division director, holding that Clay had not abandoned the claims. The commissioner found that summer claim locators are likely to underpay because they are confused by overlapping rental obligations, and noted that no statutory or regulatory language specifically requires DNR to apply payment exclusively to the first year in such cases. He based his holding on the legal conclusion that payment of one year's rent when two years' rent was due constituted deficient but timely payment under AS 38.05.265.

The December claimants appealed. Superior Court Judge Sigurd E. Murphy reversed DNR's decision, holding that Clay had fully paid rent for Year One, but paid no rent for Year Two, and therefore abandoned the 224 August claims under the plain language of

the statute. This case is a consolidated appeal by DNR and Newmont from that decision. The named private parties are now Newmont (Clay's successor in interest) and McDowell (named representative of the December claimants).

## III. STANDARD OF REVIEW

As we have explained: "We give no deference to the decision of a superior court acting as an intermediate court of appeal, and independently review the merits of an administrative decision."[6] We have recognized four principal standards of review of administrative decisions. The "substantial evidence" test is used for questions of fact. The "reasonable basis" test is used for questions of law involving agency expertise. The "substitution of judgment" test is used for questions of law where no expertise is involved. The "reasonable and not arbitrary" test is used for review of administrative regulations.[7]

## IV. DISCUSSION

### A. Clay's Payment Was Deficient but Timely.

Alaska Statute 38.05.265 provides that "[f]ailure to . . . pay any required annual rental . . . as required by [statute] and by regulations adopted under these sections constitutes abandonment," but that "[i]f an annual rental or a royalty payment is deficient but is otherwise timely paid, abandonment does not result."[8] The parties urge us to resolve the question whether payment of one year's rent when two years' rent is due constitutes deficient but timely payment under the statute. However, that question is not before us in this case, because Clay actually paid more than one year's rent.[9]

---

**4.** The December claimants apparently include a former employee of Clay's, who was present when Clay made his deficient rent payment to DNR.

**5.** See AS 38.05.275; 11 AAC 86.135(a).

**6.** Blanas v. Brower Co., 938 P.2d 1056, 1059 (Alaska 1997) (citing Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992)).

**7.** See id. (citing Jager v. State, 537 P.2d 1100, 1107 n. 23 (Alaska 1975)).

**8.** Former AS 38.05.265. This statute has been updated since 1997. However, the language relevant to this case is the same in both the former and current statutes.

**9.** DNR argues that payment of only one year's rent when two years' rent is due constitutes deficient but timely payment for purposes of AS 38.05.265. Although we do not resolve this question, our holding does not suggest that DNR is precluded from adopting such a rule. Nor do we address the question, not raised by the facts of

The DNR division director found that Clay paid $4,880 in rent. Newmont does not challenge this finding or suggest that it is unsupported by substantial evidence. Clay's total rent obligation for Year One was $20 for each of 224 claims, or $4,480.[10] By paying $4,880, Clay paid his first year's rent in full, and paid an additional $400.

Because Clay paid $400 when $4,880 was due for Year Two, his payment was deficient.[11] Because he paid on November 24, 1997 rent that was due on or before November 30, 1997, his payment was timely.[12] We hold that Clay's rent was "deficient but ... otherwise timely paid" and that "abandonment does not result" under the plain language of AS 38.05.265's cure provision.[13]

■ The apparent legislative intent, based on the legislative history of AS 38.05.265, also supports our conclusion.[14] In a House Resource Committee hearing, then-director of the Division of Mining Jerry Gallagher explained that the cure provision protects claimants who pay rent for only a portion of their annual claims:

At the bottom of the page we've added [AS 38.05.265's cure provision]. There's going to be some cases where we get deficient payments. Somebody gets confused about how many claims they have, or what year they are in the [rental fee] escalation. If ... you make a deficient payment, we have to in a sense give you the opportunity to make a full payment within a certain period of time. We'll work out the details in regulation.

This reference to claimants who are "confused about how many claims they have" suggests a legislative intent to protect claimants who inadvertently pay for some, but not all, of their annual claims. Clay seems to have made precisely this mistake: He paid $400 for the claims staked in September but failed to pay for the claims staked in August.

■ Although we base our holding on the statute, we note that DNR was probably estopped from declaring the claims abandoned for non-payment because a DNR agent told Clay that his payment was sufficient for two years' rent. Based on the record before us,[15] the elements of estoppel appear to be present: (1) the department asserted a position by conduct or words;

___

10. See former AS 38.05.211(a).

11. Clay had 244 claims in Year Two, and owed $20 for each claim. See AS 38.05.211(a); former 11 AAC 86.221(b) (1996).

12. See former 11 AAC 86.221(d) (1996) ("[t]he rental payment for each subsequent rental year is due on September 1 and must be paid on or before November 30").

13. Common law principles also support the conclusion that Clay partly paid rent for Year Two. Although we do not hold that common law debt-or-creditor principles govern interpretation of the Alaska Land Act, see State for Use & Benefit of Palmer Supply Co. v. Walsh & Co., 575 P.2d 1213, 1218 (Alaska 1978) (declining to apply common law debtor-creditor principles to case arising under statute which protects providers of labor or material for state public works), we note that Clay and his successor in interest would probably prevail under common law. Following common law principles, Clay's payment should be applied first to his oldest debts, and then equally among accounts of the same age. See 60 Am.Jur.2d Payment § 114, at 958 (1987). Clay's payment would therefore apply first to Year One; the remaining $400 would then apply to rent for Year Two.

14. Where statutory language is not sufficiently plain, we discern legislative intent by looking to both statutory provisions and legislative history. See Peninsula Mktg. Ass'n v. State, 817 P.2d 917, 922 (Alaska 1991).

15. The sufficiency of the record on this point is unclear. DNR declined to hold an evidentiary hearing regarding its agent's representations to Clay at the time of payment, because its decision was "not based primarily on representation that may have been made to Clay by the division." McDowell argues that the record contains insufficient evidence to support a finding that Clay was confused, but does not challenge the division director's finding that a DNR agent told Clay that $4,880 would cover all rent obligations.

___

this case, whether such a policy must be implemented as a regulation under the Administrative Procedure Act. AS 44.62.010.950. Compare Jerrel v. State, Dep't of Natural Resources, 999 P.2d 138, 143 (Alaska 2000) (agency policies which implement the law administered by the agency and which are used by the agency in dealing with the public must be enacted pursuant to Administrative Procedure Act guidelines) with Olson v. State, Dep't of Natural Resources, 799 P.2d 289, 292 (Alaska 1990) (discretionary agency decisions do not require formal implementing procedures).

(2) Clay acted in reasonable reliance on the department's assertion; (3) Clay suffered resulting prejudice; and (4) estopping the department from declaring Clay's claims abandoned serves the interest of justice so as to limit public injury.[16] Therefore, an estoppel theory would also support the conclusion that Clay is entitled to cure his deficient rent payment.

### B. *McDowell Is Not Entitled to Attorney's Fees.*

The superior court awarded costs and attorney's fees to McDowell's predecessor, Golden Phoenix. Because we reverse the superior court's judgment, we reverse this award as well.[17]

## V. CONCLUSION

Because his payment constituted partial, deficient payment of rent, Clay was entitled to an opportunity to cure the deficiency under AS 38.05.265, and the decision of the superior court is therefore REVERSED.

CARPENETI, Justice, not participating.

---

**16.** *See State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell,* 8 P.3d 351, 356 (Alaska 2000).

**17.** *See* Alaska R.Civ.P. 82.