Ronald W. WENDTE, Appellant,

v.

STATE of Alaska, BOARD OF REAL ESTATE APPRAISERS, Appellee.

No. S–10558.

Supreme Court of Alaska.

May 23, 2003.

Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Appellant.

Gayle A. Horetski, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

After Ronald Wendte was convicted of first degree theft for stealing about $250,000 from three children's sports programs, the Alaska Board of Certified Real Estate Appraisers suspended his real estate appraiser's license for two years. It did so under authority of AS 08.87.210(2). The superior court affirmed the suspension. We also affirm, because there is no merit to Wendte's appellate arguments that there was no nexus between his criminal conduct and his professional licensure, and that the board failed to consider relevant or current information. We conclude that substantial evidence supports the decision the board adopted, that there was a reasonable basis for the board's licensure action, and that the superior court correctly analyzed and rejected Wendte's administrative appeal.

## II. FACTS AND PROCEEDINGS

Ronald Wendte has been a residential real estate appraiser in Ketchikan since he opened his own appraisal business, Wendte

Services, in 1978. Wendte volunteered his time to handle the finances for several non-profit children's sports organizations in Ketchikan. His volunteer responsibilities included preparing gaming permit applications, collecting and depositing revenues, issuing checks, and planning raffles.

Between October 1993 and January 1997 Wendte stole over $250,000 from the Ketchikan Little League, Little League District 2, and the Kayhi Girls Basketball Club. In August 1998 Wendte pled no contest to one count of first degree theft, a Class B felony offense. Superior Court Judge Michael A. Thompson sentenced Wendte to five years in prison, with four suspended, and to ten years probation. He also ordered Wendte to complete 1,000 hours of community service and pay restitution of $257,594.80.

While Wendte was imprisoned, the Department of Commerce and Economic Development, Alaska Division of Occupational Licensing, notified him of its intention to seek disciplinary sanctions under AS 08.87.210(2) because of his theft conviction. Through his attorney, Wendte negotiated an agreement with the Division of Occupational Licensing to settle the disciplinary matter. The agreement recommended five years of professional probation and a $5,000 fine, payment of which would be stayed so long as he complied with the terms of his criminal probation and parole. By its own terms, the agreement was subject to approval by the Board of Certified Real Estate Appraisers. In March 2000 the board unanimously rejected the agreement and issued an accusation seeking either revocation or suspension of Wendte's license.

At Wendte's request, an administrative hearing was held in Juneau in January 2001. Wendte was represented by counsel, presented witnesses, and testified on his own behalf. The record also included letters written by members of the Ketchikan community to support his retention of his license. At the time of the hearing, Wendte had repaid

$2,602.12 of the $257,594.80 he owed in restitution.

Administrative Hearing Officer David G. Stebing issued findings of fact, conclusions of law, and a proposed decision in July 2001; he concluded that Wendte's theft conviction qualified as a crime of moral turpitude under AS 08.87.210(2) and that the board had discretion to reject Wendte's agreement with the division. The hearing officer concluded that revocation of Wendte's license was too harsh because Wendte's crime was "not directly related to his appraisal activities." He recommended that the board suspend Wendte's license for two years and place him on professional probation for five years after he returned to active status.

In September 2001 the board met to consider whether to adopt the hearing officer's proposed decision. After conferring in executive session, the board declined to permit counsel to argue, but gave Wendte three minutes to address the board members. Immediately after Wendte completed his comments, the board unanimously voted to adopt the hearing officer's sanctions recommendation. Wendte's license was consequently suspended for two years, effective December 2001, to be followed by five years of probation.

Wendte appealed the board's decision to the superior court. He also petitioned the board to reconsider its decision. He also asked the board and the superior court to stay suspension of his license pending the resolution of his superior court appeal. The superior court ultimately denied Wendte's request to stay his suspension.[1]

In February 2002 Superior Court Judge Patricia A. Collins affirmed the board's decision. The court held that there was substantial evidence to support disciplining Wendte for a crime involving moral turpitude under AS 08.87.210(2) and that the board properly acted within its discretion in sanctioning Wendte. The court held that "there is a direct relationship between a conviction for

**1.** It is not clear from the record whether the board formally denied Wendte's request for a stay of his suspension. In its brief, the state asserts that the board took no action on his motion and that it was therefore deemed denied

under AS 44.62.540, which provides in part that "[i]f no action is taken on a petition within the time allowed for ordering reconsideration, the petition is considered denied."

theft and a professional's ability to reflect high ethical standards for the profession."

Wendte appeals this order.

## III.  DISCUSSION

### A.  Standard of Review

Because the superior court sat as an intermediate court of appeal, we will independently review the merits of the board's administrative determination.[2]

■ We review findings of fact in appeals of administrative decisions under the "substantial evidence" test.[3]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  In this case, we will review the administrative hearing officer's findings of fact which were later adopted by the board and served as the basis for suspension of Wendte's license.  The superior court did not conduct a de novo review of the board's decision.

■ When an appeal of an agency decision involves a question of statutory interpretation, we apply one of two standards.[5]  The "reasonable basis" test applies when an issue of law requires agency expertise.[6]  When an issue of law does not involve agency expertise, the "substitution of judgment" test applies.[7]  Because this appeal concerns a disciplinary statute authorizing the Board

of Certified Real Estate Appraisers to exercise its own discretion in sanctioning license holders, we will apply the "reasonable basis" test.

### B.  The Board Had Authority To Sanction Wendte Under AS 08.87.210(2).

■ Under AS 08.87.210(2), the Board of Certified Real Estate Appraisers may exercise its disciplinary powers under AS 08.01.075[8] if the board finds that an appraiser has "been convicted of a crime that involves moral turpitude."[9]  On its face, AS 08.87.210(2) only requires the board to find that a real estate appraiser has been convicted of a crime of moral turpitude in order to exercise its disciplinary powers.

The parties do not dispute that Wendte's felony theft conviction is a crime of moral turpitude.[10]  Instead, Wendte argues that AS 08.87.210(2) requires the board to find a nexus between a crime of moral turpitude and his ability to carry out his professional duties before issuing sanctions.  He claims that because the board found both that his theft was "not directly related to his appraisal activities" and that his "crime [had] no direct nexus to his professional activity," he should not be sanctioned.

Wendte's argument is unconvincing. Nothing in the language of AS 08.87.210(2) suggests that the board may only sanction

2. *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

3. *Id.*

4. *Id.*

5. *Newmont Alaska Ltd. v. McDowell,* 22 P.3d 881, 883 (Alaska 2001).

6. *Id.*

7. *Id.*

8. AS 08.01.075 provides in part:
   (a) A board may take the following disciplinary actions, singly or in combination:
   (1) permanently revoke a license;
   (2) suspend a license for a specified period. . . .

9. AS 08.87.210 provides:
   The board may exercise its disciplinary powers under AS 08.01.075 if, after hearing, the board finds a certified real estate appraiser has

(1) violated a provision of this chapter or a regulation adopted by the board under this chapter;
(2) been convicted of a crime that involves moral turpitude;  or
(3) committed, while acting as a real estate appraiser, an act or omission involving dishonesty, fraud, or misrepresentation with the intent to benefit the appraiser or another person or to injure another person.

10. Under Alaska law, an act of theft is commonly held to be an act involving moral turpitude.  *See Disciplinary Matter Involving Schuler,* 818 P.2d 138, 140 & n. 1 (Alaska 1991) (holding that attorney's concealment of merchandise was crime of moral turpitude); *Kenai Peninsula Borough Bd. of Educ. v. Brown,* 691 P.2d 1034, 1039 (Alaska 1984) (holding that teacher convicted of willfully diverting electricity had committed crime of moral turpitude); *see also* 52A C.J.S., *Larceny* § 60(1)(b) (1968).

licensees who commit crimes of moral turpitude while they are performing their professional duties. Wendte's argument fails to recognize that criminal violations may bear on one's fitness to practice a particular profession, regardless of whether the violations are committed while the licensee performs professional duties.

In Alaska, it is common for professional licensing statutes to permit a board to impose sanctions for criminal misconduct occurring outside the scope of required professional duties.[11] We have upheld sanctions imposed against professionals who committed crimes of moral turpitude when they were not carrying out professional responsibilities.[12] Other courts have similarly interpreted professional disciplinary statutes authorizing sanctions against licensees who have committed crimes involving moral turpitude to cover crimes not committed while they performed professional activities.[13]

Although there are no reported Alaska cases applying AS 08.87.210(2), we have held in two comparable professional licensing cases that a licensing board need not establish that there is a nexus between a crime involving moral turpitude and one's ability to carry out the professional duties to issue

sanctions. In *Kenai Peninsula Borough Board of Education v. Brown,* we upheld a school board's decision to dismiss a tenured teacher convicted of the crime of willfully diverting electricity, which the board held was a theft, and therefore a crime of moral turpitude.[14] We did not require a showing of a nexus between the teacher's criminal conduct and his capacity to perform his job.[15] Instead, we held that a "finding that a crime involving moral turpitude has been committed raises at least a presumption that there is a nexus between the teacher's act and the teacher's fitness to teach."[16] We observed that, "[t]he legislature, in enacting certain criminal statutes, has established minimum acceptable moral standards for the state as a whole. If a teacher cannot abide by these standards his or her fitness as a teacher is necessarily called into question."[17]

In a later case involving the same teacher disciplinary statute, we upheld the dismissal of a teacher who years earlier had engaged in sexual misconduct with a minor.[18] Relying on *Brown,* we said, "it is well established that there need not be a separate showing of a nexus between the act or acts of moral turpitude and the teacher's fitness or capacity to perform his duties."[19] We observed that if

**11.** *See, e.g.,* AS 08.88.071(a)(10) (authorizing board to revoke or suspend license if real estate broker is "convicted of forgery, theft, extortion, conspiracy to defraud creditors, or a felony involving moral turpitude committed while licensed under this chapter"); AS 08.04.450 (providing that board may revoke license of accountant for "conviction of any crime, an essential element of which is dishonesty or fraud, under the laws of any state or the United States").

**12.** *See, e.g., Disciplinary Matter Involving Schuler,* 818 P.2d 138 (Alaska 1991) (upholding two-year suspension from practice of law for district attorney convicted of concealment of merchandise); *Kenai Peninsula Borough Bd. of Educ. v. Brown,* 691 P.2d 1034 (Alaska 1984) (upholding dismissal of tenured teacher convicted of diverting electricity, a theft crime involving moral turpitude).

**13.** *See, e.g., Jennings v. Karpe,* 36 Cal.App.3d 709, 111 Cal.Rptr. 776, 777–78 (1974) (holding that licensed real estate broker's conviction for engaging in oral sex with minor was crime of moral turpitude and grounds for revocation of license even though not connected with licensee's activities as real estate broker); *Carp v.*

*Florida Real Estate Comm'n,* 211 So.2d 240, 241 (Fla.Dist.App.1968) (holding that registered real estate broker's bookmaking conviction was crime of moral turpitude and grounds for suspension or revocation of registration); *Missouri Real Estate Comm'n v. McCormick,* 778 S.W.2d 303, 308 (Mo.App.1989) (upholding suspension of real estate broker's license where broker plead guilty to theft related to insurance business).

**14.** 691 P.2d 1034 (Alaska 1984).

**15.** The statute at issue in *Brown,* AS 14.20.170, provided in part that "[a] teacher ... may be dismissed at any time for ... immorality, which is defined as the commission of an act which, under the laws of the state, constitutes a crime involving moral turpitude...." *See Brown,* 691 P.2d at 1036 n. 1.

**16.** *Brown,* 691 P.2d at 1041.

**17.** *Id.*

**18.** *Toney v. Fairbanks North Star Borough Sch. Dist., Bd. of Educ.,* 881 P.2d 1112 (Alaska 1994).

**19.** *Id.* at 1114.

the school district had sufficient evidence that Toney had committed an act of moral turpitude, the dismissal was valid.[20]

The reasoning of *Brown* and *Toney* is persuasive. Alaska Statute 08.87.210(2) contemplates a nexus between a crime involving moral turpitude and the ability to satisfy the requirements of the profession. We hold here that there is a presumed logical nexus between any crime of moral turpitude and the ability to satisfy the ethical standards of the real estate appraisal profession. The superior court correctly noted that when professionals commit crimes involving moral turpitude "their fitness to hold a position of trust is necessarily called into question."

Alaska Statute 08.87.210(2) contemplates that a crime involving moral turpitude necessarily bears on a real estate appraiser's trustworthiness, regardless of whether a licensee commits such a crime while acting as a real estate appraiser. The real estate appraisal profession requires reliability and honesty of its members. An appraiser who had been the first chairman of the Alaska Board of Certified Real Estate Appraisers, Alfred Ferrara, testified at Wendte's January 2001 hearing. He testified that the purchase of a house is "often the largest financial transaction many individuals ever get involved in." He explained that the appraiser is "the only objective party, quite often, in that transaction."[21]

Wendte argues that he has rebutted any presumption of a nexus between a crime of moral turpitude and fitness to perform duties. He cites the *Brown* court's observation that during the disciplinary hearing provided under the statute, "[o]f course ... the teacher may attempt to demonstrate that the board should retain the teacher despite the finding of a crime involving moral turpi-

tude."[22] Wendte claims that he has overcome the *Brown* presumption because the board found that his crime did not have a direct connection with his real estate activities. He therefore claims he should not be sanctioned at all.

Wendte's argument is without merit. The board found that "Wendte's theft conviction is not directly related to his appraisal activities." But that is not evidence that he sufficiently rebutted the presumption that he was unfit to be a real estate appraiser. As discussed above, *Brown* held that a finding that a crime of moral turpitude has been committed raises at least a presumption that there is a nexus between a professional's act and his fitness to practice his profession. Fitness to practice a regulated profession demands more than the professional's capacity to perfunctorily complete required activities. The board's finding that Wendte's crime was not directly related to his professional *activities* does not rebut *Brown*'s presumption that there is a nexus between a crime of moral turpitude and one's *fitness* to hold a professional license.[23]

The plain language of AS 08.87.210(2) suggests that there is a connection between a crime of moral turpitude and general fitness to be a real estate appraiser regardless of whether the crime was committed in the course of carrying out real estate appraising activities. Because the board properly found that Wendte's theft was a crime of moral turpitude, the board had discretion to impose sanctions.[24] We therefore affirm the superior court's decision affirming the board's sanctions.

### C. Double Jeopardy

Wendte also argues that he cannot be sanctioned because the suspension of his pro-

---

20. *Id.*

21. Ferrara initially testified at the January 2001 hearing that he "usually [ ] would not refer someone ... who has had a criminal conviction of that type...." He later testified that he would look at the appraiser's post-conviction conduct to see if he was doing good work.

22. *Brown,* 691 P.2d at 1041.

23. *Cf.* Alaska R. Evid. 609 (allowing impeachment of witness based on conviction of crime involving dishonesty or false statement).

24. *See Toney,* 881 P.2d at 1114 (holding that dismissal of teacher was valid as long as school district had sufficient evidence that Toney had committed act of moral turpitude); *Brown,* 691 P.2d at 1041 (holding that school board had met its burden of going forward by finding that Brown had committed theft).

fessional license is a punishment that violates the prohibition on double jeopardy.

■ In Alaska, revoking or suspending a professional license is not "punishment" for double jeopardy purposes when it furthers a regulatory goal. In *State v. Zerkel,* the Alaska Court of Appeals held that administratively revoking a driver's license for refusing to submit to a blood alcohol test did not constitute punishment for double jeopardy purposes.[25] The court there observed that "[a] person who loses a professional license in an administrative proceeding is not subjected to 'punishment' for double jeopardy purposes, even though the revocation or suspension is based on misconduct that could be or has been prosecuted as a criminal offense."[26] The court recognized that professional license revocation does not punish the licensee, but rather serves the regulatory goal of protecting the public from unfit practitioners.[27]

We later observed in *State v. Niedermeyer* that administrative revocation or suspension of a professional license "can legitimately serve to deter conduct and still remain 'remedial' for double jeopardy purposes *so long as the revocation or suspension is based on conduct that bears a direct relation to the government's regulatory goals* or to the proper administration and enforcement of the regulatory scheme."[28]

Wendte argues that "the prohibition against double jeopardy prevents sanctioning a licensee, unless there is a direct nexus between the criminal conviction for a crime of moral turpitude and the professional activity of the licensee." Thus, he argues that because the board found that his theft was not connected to his appraisal activities, the suspension of his license does not bear a direct relation to the state's regulatory goals. Here again, Wendte asserts that only professional activities should bear on his fitness as

a real estate appraiser. But as discussed above, there is a nexus between committing a crime of moral turpitude and one's fitness to be a real estate appraiser. Alaska Statute 08.87.210(2) reflects the board's regulatory goal of maintaining high ethical standards for the profession.

### D. The Board's Decision Was Reasonably Based on Relevant and Current Information.

Wendte argues that the board did not base its decision on relevant or current information. He first contends that the board did not consider his post-conviction conduct, the effect of the hearing officer's proposed sanctions on his ability to make restitution payments, and alternative lesser sanctions. In support, he cites only *State, Division of Insurance v. Schnell,* in which we held that an insurance agent whose license was suspended was entitled to present updated evidence regarding his professional conduct during the period of time after disciplinary proceedings had been instituted.[29] Without conducting a new hearing, the Alaska Division of Insurance took almost three years, 1992–95, to issue a decision disciplining Schnell, due in part to personnel changes at the division.[30] We held that Schnell was entitled to present updated evidence describing (1) his post–1992 conduct, (2) the current effect that the hearing officer's proposed sanctions would have, and (3) alternative supervisory controls available through his employer.[31] We concluded that this evidence was highly relevant to the issue of sanctions.[32]

*Schnell* is inapposite. We directed the division on remand to consider updated evidence because there was a three-year delay between the hearing and the issuance of a decision disciplining Schnell. *Schnell* does not require licensing boards to apply particular criteria when imposing sanctions. Nor

25. 900 P.2d 744 (Alaska App.1995).

26. *Id.* at 753.

27. *Id.* at 754.

28. 14 P.3d 264, 269 (Alaska 2000) (quoting *Zerkel,* 900 P.2d at 757).

29. 8 P.3d 351, 360–61 (Alaska 2000).

30. *Id.* at 354–55.

31. *Id.* at 360.

32. *Id.*

does *Schnell* require boards to give any particular factors a certain weight. Likewise, AS 08.87.210(2) here grants the board discretion to impose sanctions on real estate appraisers. Although the board must exercise its discretion reasonably, the statute does not require the board to consider any particular criteria when imposing sanctions.

Nonetheless, the record establishes that the hearing officer did consider Wendte's post-conviction conduct and the effect of proposed sanctions on Wendte's life. The hearing officer acknowledged that Wendte's real estate appraisal business "was rebounding after his incarceration." The hearing officer acknowledged that Wendte was not able to work during his incarceration, but found it significant that he had paid only $2,602.12 of the $257,594.80 in restitution he owed at the time of the January 2001 hearing. The hearing officer also considered alternative sanctions for Wendte. Taking into account that Wendte's crime was not perpetrated while conducting professional activity, the hearing officer recommended that the board suspend rather than completely revoke Wendte's license, even though the division had requested revocation.

The board therefore considered the "criteria" that Wendte requested, but drew a different conclusion than Wendte would have liked. As Judge Collins concluded, "[i]t is fairly clear that the [b]oard simply assigned different weight to the evidence than that suggested by Mr. Wendte."

Wendte next argues that the board's September 2001 decision to suspend his license did not reflect any new information about his conduct since the last hearing in January 2001. He contends that because the board voted immediately after Wendte finished speaking, it did not consider the updated evidence he offered. Wendte argues that *Schnell* "mandates that the [b]oard hear updated information relevant to the issue of sanctions before imposing sanctions."

Wendte's reliance on *Schnell* is again misplaced. Wendte did not experience a three-year delay between his last opportunity to offer evidence and the issuance of a decision. Wendte's administrative hearing took place in January 2001. The board issued its final decision in September 2001. Less than eight months elapsed before the board imposed sanctions. This period was too short to imply the likelihood of material changes in Wendte's conduct.

Although Wendte had only three minutes to address the board at the September 2001 hearing, the board was under no obligation to allow either side to make any presentation. As the superior court noted, the only updated evidence Wendte presented at the September 2001 hearing concerned his most recent restitution payment of $4,450, bringing his total payment to $7,000. At the January hearing, Wendte had already presented evidence that his business rebounded after he was released from prison, submitted letters supporting him, and offered testimony of witnesses recommending him as an honest appraiser. The additional restitution is not legally significant, given both that a large amount remained unpaid, and that restitution payments were not the only factor the board considered in sanctioning Wendte.[33]

Wendte also argues that the district attorney's sentencing memorandum in the criminal case was insufficient "to set forth the factual basis for Wendte's conviction." He argues that he is not attacking the validity of his no-contest plea. Instead, he argues that the board should not have used the district attorney's sentencing memorandum as a factual basis on which to sanction him administratively because "[w]hether Wendte did what the district attorney's sentencing memorandum alleges was never resolved in the criminal proceedings...."

The hearing officer's proposed decision relied on more than the district attorney's sentencing memorandum for its account of the details of Wendte's theft. To substantiate his findings of fact regarding the circumstances of Wendte's crime, the hearing officer cited Wendte's licensing file, the judgment and order of commitment and

---

33. The board adopted the hearing officer's decision and did not consider evidence beyond the record created at the January hearing. In addition to payment of restitution, the hearing officer considered Wendte's post-incarceration conduct, community reaction to the crime, and the nature of Wendte's crime.

probation in *State v. Wendte*,[34] the state's sentencing memorandum and exhibits in *State v. Wendte*, the Division of Occupational Licensing's investigative file on Wendte, sentencing letters, and the transcript of Judge Thompson's remarks at sentencing.

Moreover, Wendte did not ask the hearing officer not to consider the district attorney's sentencing memorandum. He only objected to the hearing officer using the sentencing memorandum to establish any instances of theft other than those the state advanced at Wendte's no contest hearing. Wendte did not, however, identify any particular passages in the sentencing memorandum which were unsubstantiated, nor does he do so now. He also has not demonstrated how the hearing officer's consideration of the sentencing memorandum harmed him. Wendte has therefore waived his argument that the hearing officer should not have considered the sentencing memorandum.[35]

## IV. CONCLUSION

We AFFIRM the superior court decision affirming the sanctions imposed by the board.

---

**34.** *State v. Wendte*, No. 1KE–97–99 Cr. (Alaska Super., March 22, 1999).

**35.** *Walden v. Dep't of Transp.*, 27 P.3d 297, 304 (Alaska 2001) ("It is well-settled that a party must object to evidence at the time it is offered in order to preserve the issue on appeal.").